UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHILIPS NORTH AMERICA LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-0147-B |
| IMAGE TECHNOLOGY CONSULTING, LLC and MARSHALL R. SHANNON, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Image Technology Consulting, LLC ("Image Technology") and Marshall R. Shannon (collectively, the "Defendants")'s Motion to Dismiss (Doc. 36) and Brief in Support (Doc. 37). Because Plaintiff's claim is not preempted by TUTSA and Defendants do not otherwise meet their burden for dismissal, the Court **DENIES** Defendants' Motion.

## I.

## BACKGROUND[1]

Philips North America LLC ("Philips") makes and services medical imaging systems. Doc. 31, Am. Compl., ¶ 1. These systems include the "CT and PET scanners, x-ray machines, ultrasound machines, MR scanners, and nuclear medicine scanners" used at hospitals and medical centers. *Id.* ¶ 19. The systems contain proprietary software and optional add-on features that are licensed to end users for a fee. *Id.* ¶ 20. To implement this licensing system, the systems contain various access control measures. *Id.* Philips also has its customers enter into agreements when they purchase a

---

[1] The Court draws the following factual account from Philips's Amended Complaint (Doc. 31).

medical imaging system, which include the "Philips Standard Terms and Conditions of Sale" and "Philips Software Licensing Agreement." *Id.* ¶ 121.

Beyond the systems themselves, Philips has also developed "extensive proprietary information, documentation, and software" for the systems' servicing and maintenance. *Id.* ¶ 22. Philips refers to these service tools and documentation as its Customer Service Intellectual Property ("CSIP"). *Id.*

Philips provides individuals access to varying "levels" of CSIP depending on the person's role and contractual terms. *Id.* ¶ 25. "CSIP Level 0 materials are available to [anyone] in the United States who request[s] access to such materials." *Id.* CSIP Level 1 materials are "available only to Philips' employees and customers with a valid contract and subject to non-disclosure agreements." *Id.* CSIP Level 2 is available "for certain Philips' [sic] employees and specific trade partners under contract." *Id.* And CSIP Level 3 is reserved for only a "subset of service specialists within Philips." *Id.* Individuals with above Level 0 access must sign a confidentiality agreement that acknowledges "Philips' substantial investment in Philips' proprietary information." *Id.* ¶ 27.

Philips controls access to the varying levels of CSIP using its Integrated Security Tool ("IST"). *Id.* ¶ 29. Specifically, the IST "generates a user-specific IST certificate" which "specifies the tools the user is entitled to access." *Id.* The IST certificate is thus like a "key card that allows only the specific user with appropriate entitlements" to gain access to the CSIP materials. *Id.* "For example, a user with an IST certificate that provides Level 1 access to Philips' CT documents and Level 0 access to Philips' X-Ray documents, would be prevented from decrypting Level 2 CT documents or Level 1 or Level 2 X-Ray documents . . . ." *Id.* ¶ 33.

Defendant "Image Technology is a medical device equipment sale[s] and servicing company that sell[s] Philips' medical imaging devices"—specifically parts for and servicing of Philips MRI systems—and Shannon "is [its] director of operations." *Id.* ¶¶ 4, 38–41. Philips granted Defendants CSIP Level 0 access to service Philips systems and never authorized a higher level of access. *Id.* ¶¶ 52–56.

However, while investigating a "third-party medical device repair company, 626 Holdings, LLC and its principal, Alexander Kalish," Philips discovered Kalish had created a "software program to generate fake Philips IST certificates" that impersonated Philips employees. *Id.* ¶ 43. Kalish "generated a fake Philips IST certificate for Defendants" and provided Defendants with unauthorized copies of Philips's CSIP materials. *Id.* Defendants used these "fake and/or unauthorized IST certificates to hack Philips' access control mechanisms on the Philips systems to gain unlicensed and unauthorized access to Philips systems[,] . . . . including software to modify medical devices." *Id.* ¶ 42.

Philips also alleges that Defendants themselves "sell and/or provide fake and/or unauthorized IST certificates to third parties" resulting in "unauthorized access to Philips' restricted software." *Id.* For example, in another investigation, "Philips learned that Defendants provided and/or sold one or more unauthorized certificates" to Alpha Biomedical and Diagnostic Corp. ("Alpha"). *Id.* ¶ 44. Defendants used fake Philips IST certificates when servicing Philips systems for Alpha, altering the settings to grant "above Level 0 access to Philips' CSIP during its service and repair activities." *Id.* ¶ 45.

Moreover, Defendants advertise their ability to provide this service support and access to customers on their website. *Id.* ¶¶ 59–60. For example, Image Technology's advertised technical

support includes "PDF support of [original equipment manufacturer ('OEM')] documents, help pages, short cuts, and other support help for sites and engineers." *Id.* ¶ 41. Image Technology further claims to be "the leading third party parts and service provider [that] . . . owns all the test tools, ramp and shim supplies, plus phantoms and fixtures necessary to make your images meet or exceed OEM specifications at a fraction of the OEM cost!" *Id.* ¶ 126.

Philips filed its Complaint on January 21, 2022, asserting unfair competition and fraud claims, as well as claims under the Computer Fraud and Abuse Act ("CFAA"), Digital Millennium Copyright Act ("DMCA"), Defend Trade Secrets Act ("DTSA"), and Texas Uniform Trade Secrets Act ("TUTSA"). Doc. 1, Compl., ¶¶ 61–137. Defendants previously filed a motion to dismiss on May 4, 2022. Doc. 19, Mot. Dismiss. The Court upheld four out of five of Philips's claims but dismissed without prejudice the unfair competition claim because Philips had not specifically identified "which cause(s) of action support the unfair competition claim." Doc. 27, Mem. Op. Order, 19.

Philips in turn filed its Amended Complaint, which provides four potential bases for the unfair competition claim: Defendants' violation of the CFAA, Defendants' violation of the DMCA, false advertising, and tortious interference with contract. Doc. 31, Am. Compl., ¶ 119. Defendants filed another motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 36, Mot. Dismiss. In their motion, Defendants first argue that Philips's unfair competition claim fails because it is preempted by TUTSA and, to the extent the claim rests on false advertising or tortious interference, those underlying claims are inadequately pleaded. Doc. 37, Br. Supp., ¶¶ 4–11. Second, Defendants argue that an unfair competition claim based on the CFAA or DMCA is preempted and would lead to duplicative litigation. *Id.* ¶¶ 12–15. Because the Court

finds Philips's unfair competition claim is not preempted by TUTSA and Defendants have otherwise failed to carry their burden for dismissal, the Motion is **DENIED.**

## II.

## LEGAL STANDARDS

*A.    Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this

standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.

## ANALYSIS

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (internal quotation omitted). But a claim for unfair competition cannot stand on its own; rather, liability must be premised on some other independent substantive tort or illegal conduct. *See id.*; *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied). The Court will therefore only analyze the unfair competition claim to the extent it is premised on another underlying tort or illegal action.

Philips alleges four potential bases for its unfair competition claim: (1) Defendants' violation of the DMCA, (2) Defendants' violation of the CFAA, (3) false advertising, and (4) tortious interference with contract.

A.  *Unfair Competition Based on False Advertising or Tortious Interference with Contract*[2]

Defendants first argue that, to the extent Philips's unfair competition claim is premised on false advertising or tortious interference with contract, the claim is preempted by TUTSA and also fails to adequately plead the underlying claims for tortious interference or false advertising. Doc. 37, Br. Supp., ¶¶ 8–11. The Court will address each in turn.

---

[2] The Court does not decide whether there is in fact a common law cause of action for false advertising under Texas law. Defendants do not argue against such a cause of action, and Defendants have the burden to establish that the Complaint does not state a claim. *See Vendever LLC v. Intermatic Mfg. Ltd.*, 2011 WL 4346324, at *4 n.4 (N.D. Tex. Sept. 16, 2011).

### 1.     TUTSA Does Not Preempt Philips's Unfair Competition Claim

TUTSA allows a plaintiff to seek injunctive relief and damages for the misappropriation of a trade secret. *See generally* Tex. Civ. Prac. & Rem. Code §§ 134A.001–08. The statute also contains a preemption provision, which provides that TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *Id.* § 134A.007(a). TUTSA does not affect, however, "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* § 134A.007(b)(2).

Texas courts to consider the preemption provision have held that "the plain language . . . indicates that the law was intended to prevent inconsistent theories of relief for the same *underlying harm* by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.) (emphasis added) (quoting *Smithfield Ham & Prod. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995)). Thus, when the essence of a "common law claim duplicates a TUTSA claim, the common law claim is preempted." *Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 533 (Tex. App.—San Antonio 2020, pet. denied).

Understanding the scope of the preemption provision therefore requires understanding the scope of "misappropriation of a trade secret." *See* Tex. Civ. § 134A.007(a). The statute defines misappropriation as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person who . . . [listing conditions]." *Id.* § 134A.002(3). In short, misappropriation consists of acquisition through improper means, or disclosure or use under certain conditions. *See id.; Super Starr*, 531 S.W.3d at 844. Improper means

are further defined to "include[] theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, . . . or espionage." Tex. Civ. § 134A.002(2).

Thus, though articulated in varying ways, courts in Texas have found TUTSA preemption where the alternative claim was based on the disclosure, use, or improper acquisition of a trade secret. In *Super Starr* for example, a Texas appellate court held TUTSA preempted a breach of fiduciary duty claim where the defendants, "by *using* confidential and proprietary information," "divert[ed] [the LLC's] accounts and business" and "solicit[ed] [the LLC's] accounts and employees" in "breach[] of their fiduciary duty to [the LLC]." 531 S.W.3d at 843 (emphasis added). Likewise, in *Title Source*, the court held that, to the extent the plaintiff's fraud claim was based on allegations that Title Source had "*fraudulently induced* HouseCanary to enter into the contract *so it could obtain* HouseCanary's data and analytics," the claim was preempted. 612 S.W.3d at 533 (emphasis added). In other words, because the fraud claim was based on the improper acquisition of a trade secret through misrepresentation, the claim was preempted. *See id.*

Here, Defendants assert that, to the extent Philips's unfair competition claim is based on false advertising or tortious interference with contract, the claim is preempted. Doc. 37, Br. Supp., ¶ 8. The Court will thus look to the tort or illegal conduct underlying the unfair competition claim in analyzing TUTSA preemption.

The Court finds *Silicon Image, Inc. v. Analogix Semiconductor, Inc.* instructive here. 2007 WL 1455903, at *1 (N.D. Cal. May 16, 2007); *see also* Tex. Civ. § 134A.008 ("[TUTSA] shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it."). In *Silicon Image*, Silicon Image's competitor copied and used its alleged trade secrets to create semiconductor chips that "mirror[ed] those . . .

made by Silicon Image." 2007 WL 1455903, at *1. The competitor's semiconductor chips could be used with Silicon Image's configuration software, even though use of non-Silicon Image chips violated the Software License Agreement. *Id.* The court found that claims for false advertising and tortious interference with contract were not preempted by the California Uniform Trade Secrets Act ("CUTSA")[3] because the allegations were "based on new facts that go beyond the alleged misappropriation of trade secrets." *Id.* at *9. Specifically, in analyzing both CUTSA and copyright preemption, the court found significant the misrepresentation that customers could "use the Silicon Image software in combination with the [competitor's] chip without violating the Silicon Image Software Agreement." *See id.* at *8. More importantly, the opinion also emphasized that neither of the claims were "based on the theory that the wrong for which redress is sought is the *misappropriation* of trade secrets." *Id.* at *9 (emphasis added).

The Court agrees with that approach as consistent with the plain text of TUTSA's preemption provision, which displaces other "civil remedies for misappropriation of a trade secret," as that term is defined in the statute. Tex. Civ. § 134A.007(a); *see also* Tex. Civ. § 134A.002(2)–(3). And while the Court acknowledges the "breadth" with which courts have applied preemption to misappropriation of confidential business information generally, *see Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018), the Court also doubts the Texas legislature intended for TUTSA to become a plaintiff's sole remedy whenever the allegations somehow touch on business information or trade secrets.

---

[3] CUTSA has a similar preemption scheme to TUTSA. The statute provides that the title "does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret," and California courts have construed the statute to thus implicitly preempt other causes of action "based on trade secret misappropriation." *Compare* Cal. Civ. Code § 3426.7, *and K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009), *with* Tex. Civ. § 134A.007.

Applying those principles while viewing the facts in the light most favorable to Philips, the Court finds that TUTSA does not preempt Philips's unfair competition claim based on false advertising and tortious interference with contract. Like in *Silicon Images*, Philips's claim alleges facts beyond misappropriation and, more importantly, seeks redress for harms beyond those covered in the definition of "misappropriation" under the statute. *See* Tex. Civ. § 134A.002(2)–(3).

Regarding tortious interference, Philips's customers enter into agreements with Philips when they purchase an imaging system, namely the "Standard Terms and Conditions of Sale" and the "Software Licensing Agreement." Doc. 31, Am. Compl., ¶ 121. Both agreements contain terms related to software and software use on the Philips systems, which include provisions that "[t]he Licensed Software is licensed to Customer on the basis that (a) Customer shall maintain the configuration of the products as they were originally designed and manufactured, and, (b) the product includes only those subsystems and components certified by Philips." *Id.* ¶ 122. Construing the language of the agreements most favorably to Philips, the harm underlying the tortious interference allegation goes beyond use or disclosure of trade secrets. Rather, the harm is premised on Philips's existing customer agreements and whether Defendants have interfered with Philips's rights and customers' obligations as to the licensed products. The underlying harm alleged is therefore distinct from the misappropriation of a trade secret, and the claim is not preempted at this stage in the litigation.

Philips also alleges that Defendants "falsely advertised on their website that their methods are authorized" and that they "own all the test tools, ramp and shim supplies, plus phantoms and fixtures necessary to make [system] images meet or exceed OEM specifications at a fraction of the

OEM cost." *Id.* ¶ 126. The claim for false advertising is therefore based on the *misrepresentation* to customers that Image Technology's methods were authorized and properly owned, yet cheaper than Philips's services. *See id.* Like with tortious interference, the harm alleged for false advertising therefore goes beyond any use, disclosure, or improper acquisition of trade secrets and is not preempted by TUTSA.

Moreover, like in *Silicon Images*, when the tortious interference and false advertising harms are considered together, the contracts and advertisements could misrepresent to customers that Image Technology's service will not violate the software licensing agreement. *See* 2007 WL 1455903, at *7–8. That harm is also distinct from a theory seeking redress for misappropriation, and the facts are thus enough to survive a motion to dismiss based on preemption.

        2.      <u>Defendants' Arguments Regarding the Sufficiency of the Underlying Tortious Interference with Contract and False Advertising Claims Fail</u>

Defendants also raise several arguments regarding the sufficiency of the underlying claims for tortious interference with contract and false advertising. For the tortious interference with contract claim, Defendants argue that Philips has "failed to plead facts showing that Defendants interfered with a valid contract with an *actual* customer." Doc. 37, Br. Supp., ¶ 10. That argument is unavailing.

To establish a tortious interference claim, "a plaintiff must present evidence that the defendant interfered with a *specific contract*." *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (emphasis added). Without citing a single source, Defendants seek to turn the *specific contract* requirement into an *actual customer* requirement. *See* Doc. 37, Br. Supp., ¶ 10. But other courts to consider the issue have not been so demanding, especially at the motion to dismiss stage. *See, e.g.*, *Nestle USA, Inc. v. Ultra Distribuciones Mundiales*

*S.A. de C.V.*, 516 F. Supp. 3d 633, 659 (W.D. Tex. 2021) (upholding tortious interference claim where plaintiffs alleged they had existing contracts with "authorized distributors").

Likewise, for false advertising, Defendants cursorily argue that Philips fails to state what "duty Defendants apparently breached" or "what is false about Defendants' alleged advertisements." Doc. 37, Br. Supp., ¶ 11. But Philips has pleaded that Defendants are "falsely advertising on their website that their methods are authorized" and "fail to disclose that they use fake IST certificates and unauthorized copies of Philips CSIP materials." Doc. 31, Am. Compl., ¶ 126. Moreover, Defendants have not provided the Court with sufficient legal authority to determine whether Philips has stated a claim. Defendants, as movants, have therefore failed to meet their burden. *See Cantu v. Guerra*, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021) ("To prevail on a motion to dismiss . . . under Fed. R. Civ. P. 12(b)(6), the defendant must show that the plaintiff is unable to satisfy the applicable standard for stating a claim under Fed. R. Civ. P. 8(a).") (internal quotations omitted).

B.  *Unfair Competition Based on Violations of the DMCA or CFAA*[4]

Second, Defendants argue that, to the extent Philips's unfair competition claim is premised on alleged DMCA and CFAA violations, the claim fails because Philips's pleading is a "generic allegation[]" and, in any event, the DMCA and CFAA claims preempt similar state law claims. Doc. 37, Br. Supp., ¶¶ 12–15. Defendants' arguments ignore the posture of the unfair competition claim and are insufficient as to preemption.

The Court in its previous order found that Philips had adequately pleaded its claims under the DMCA and CFAA to survive a motion to dismiss. Doc. 27, Order, 13, 16. Because a claim for

---

[4] Defendants make no argument as to whether other federal laws can serve as the underlying basis for an unfair competition claim. *See also supra* note 2.

unfair competition relies on an underlying tort or illegal conduct, Defendants' argument of a "generic allegation[]" ignores the already-pleaded basis on which Philips asserts its unfair competition claim. *See* Doc. 31, Am. Compl., ¶¶ 61–70, 71–89; *see also Schoellkopf*, 778 S.W.2d at 904–05 (noting that "unfair competition" relies on an "independent substantive tort or other illegal conduct").

Nor do Defendants carry their burden in establishing Philips's federal law claims preempt an unfair competition claim based on those federal laws. Defendants assert Philips's DMCA claim is preempted under § 301 of the Copyright Act. *See* Doc. 37, Am. Compl., ¶ 13. Section 301 of the Copyright Act provides that all laws "that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" are preempted. 17 U.S.C. § 301(a), (b)(3). Section 106, in turn, provides the exclusive rights within the scope of copyright, which consist of the right to reproduce the copyrighted work, prepare derivative works, distribute copies, and perform and display the work publicly. *Id.* § 106. Together, therefore, the Copyright Act's preemptive scope is defined by the exclusive rights specified by § 106; not every right or remedy under the Copyright Act implicates § 301 preemption. *See Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 377 (5th Cir. 2020).

The DMCA, by contrast, "is targeted at circumvention [and] does not apply to the use of copyrighted works after the technological measure has been circumvented." *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010) (emphasis omitted). It states: "No person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). Therefore, under the plain language of the statute, the preemptive force of § 301 does not apply to the rights protected under the DMCA

because the DMCA deals with rights and conduct outside of the "exclusive rights within the general scope of copyright." *See id.* § 301(a).

Finally, Defendants' cursory argument that the CFAA "preempts" the unfair competition claim or otherwise results in "duplicative litigation" is not enough to carry their burden on a 12(b)(6) motion to dismiss. *See* Doc. 37, Br. Supp., ¶¶ 13, 15. First, Defendants have pointed to no basis for any sort of CFAA preemption, and the Court will not lightly presume one exists. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."). Second, Defendants' citation to *Embarcadero* for the proposition that dismissal is appropriate because of "duplicative litigation" or "confus[ing] theories of litigation" strips that case of its context. *See* Doc. 37, Br. Supp., ¶ 15. There, the court was discussing preemption in the context of TUTSA, which contains an express preemption provision and is a matter of state law. *See Embarcadero*, 2018 WL 315753, at *3.

## IV.
## CONCLUSION

"On the present motion, . . . additional assessment would essentially amount to judicial screening of the claims asserted in this case. But Rule 12(b)(6) is not a judicial screening mechanism . . . ." *Cantu*, 2021 WL 2636017, at *1. Rather, "despite the natural focus on the allegations of the operative pleading, the movant has the burden on a motion to dismiss under Rule 12(b)(6)." *Id.* Mere cursory references to the 12(b)(6) standard under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) will not suffice.

Because Philips's unfair competition claim is not preempted by TUTSA and Defendants have otherwise failed, as movants, to carry their burden, Defendants' Motion to Dismiss (Doc. 36) is **DENIED.**

**SO ORDERED.**

**SIGNED: November 21, 2022**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE