UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHILIPS NORTH AMERICA LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| IMAGE TECHNOLOGY CONSULTING | § | CIVIL ACTION NO. 3:22-CV-0147-B |
| LLC, MARSHALL R. SHANNON, | § | |
| IMAGE TECHNOLOGY CONSULTING | § | |
| II, LLC, and AXIOM IMAGING | § | |
| SOLUTIONS INC., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Philips North America, LLC ("Philips")'s Motion to Dismiss

Defendants Image Technology Consulting II, LLC ("Image II") and Axiom Imaging Solutions Inc.

("Axiom") (collectively, the "Joined Defendants")'s Amended Counterclaims (Doc. 154). For the

reasons that follow, the Court **GRANTS** Philips' Motion.

I.

BACKGROUND

Philips manufactures and services medical imaging systems, including MRI scanners. Doc.

119, Second Am. Compl., ¶¶ 1, 23. Philips is one of four major MRI manufacturers. Doc. 148,

Second Am. Countercls., ¶ 11. While Philips services its customers' MRIs, customers may also use

third-party servicers for their "installation, service, and repair work." *Id.* ¶ 12.

Joined Defendants are "medical device equipment sale[s] and servicing companies that sell

Philips' medical imaging devices"—specifically, they sell parts for and servicing of Philips MRI

systems—and Initial Defendant Shannon "is [their] director of operations." Doc. 119, Second Am. Compl., ¶¶ 4, 42–45. In order to properly service Philips MRIs, Joined Defendants need access to an MRI's "basic operating system." Doc. 148, Second Am. Countercls., ¶ 15. Third-party servicers like Joined Defendants typically have two advantages over manufacturers like Philips: "lower prices and faster response times." *Id.* ¶ 21.

Philips MRI systems allegedly contain proprietary software and optional add-on features that are licensed to customers for a fee. Doc. 119, Second Am. Compl., ¶ 24. Philips alleges it has also developed Customer Service Intellectual Property ("CSIP"), which refers to "extensive proprietary information, documentation, and software" for the Philips MRI's servicing and maintenance. *Id.* ¶ 26.

Philips provides individuals access to varying "level[s]" of CSIP depending on the person's role and contractual terms. *Id.* ¶ 29. "CSIP Level 0 materials are available to [anyone] in the United States who request[s] access to such materials." *Id.* CSIP Level 1 materials are "available only to Philips' employees and customers with a valid contract and subject to non-disclosure agreements." *Id.* ¶ 29. CSIP Level 2 is available "for certain Philips' [sic] employees and specific trade partners under contract." *Id.* CSIP Level 3 is reserved for "only a subset of service specialists within Philips." *Id.*

Philips controls access to the varying levels of CSIP information using its Integrated Security Tool ("IST"). *Id.* ¶ 33. Specifically, the IST "generates a user-specific IST certificate, which specifies the service tools the user is entitled to access." *Id.* The IST certificate is thus like a "key card that allows only the specific user with appropriate entitlements" to gain access to the CSIP material. *Id.*

On December 18, 2018, Philips started "issuing field change orders" to its engineers to "implement a series of firmware updates" called "SP5" on Philips MRIs. Doc 148, Second Am. Countercls., ¶ 17. Following those change orders, Philips' engineers began to install SP5 onto Philips MRIs in February 2019.[1] *Id.* Once installed, SP5 "imposed a new log-in screen that blocks anyone without Philips access credentials" from reaching an MRI's operating system and diagnostic software. *Id.* In effect, third-party servicers like Joined Defendants are "locked out" from the MRIs. *Id.* ¶ 18. If a customer, such as a hospital, with an SP5-updated MRI scanner wishes to contract with a third-party servicer to repair its MRI, "it typically must contact Philips and request that a Philips technician physically come out to [a] facility to unlock the Philips MRI Machine." *Id.* ¶ 20. The unlocking process imposes costs on the customer in terms of time and money. *Id.* Prior to SP5's rollout, third-party servicers could "install, service, and repair [a customer's] Philips MRI without involving Philips" and its associated unlocking costs. *Id.* ¶ 21.

According to Philips, Joined Defendants have used "fake and/or unauthorized IST certificates to hack Philips' access control mechanisms on the Philips systems to gain unlicensed and unauthorized access to Philips systems[,] . . . including software to modify medical devices." Doc. 119, SAC, ¶ 47. Joined Defendants in turn contend that Philips has "locked out its competition from being able to access, service, repair, and maintain Philips-brand MRI Machines owned by hospitals and healthcare facilities." Doc. 148, Am. Countercls., ¶ 10.

---

[1] In Joined Defendants' Original Counterclaims, they alleged the Philips "pushed" the SP5 update in October 2018. Doc. 134, Orig. Countercls., ¶ 12. This "push . . . eliminated access to previously available [information] and locked out [independent service providers from accessing Necessary Information needed to service" Philips MRIs. *Id.* The Original Counterclaims do not allege what the "push" consists, or if it is distinct from issuing field change orders and installing the update. The record also does not reflect why Philips' first action is now alleged to take place in December rather than October.

While this suit originated in January 2022, Doc. 1, Compl., Joined Defendants were added in September 2023. Doc. 119, SAC. Upon taking Initial Defendant Shannon's deposition in July 2023 and learning of the Joined Defendants' involvement in Initial Defendants' business, Philips sought and was granted leave to file a Second Amended Complaint ("SAC") that named Joined Defendants. *See* Docs. 102, 117. The SAC asserts against Joined Defendants the same claims Philips asserted against Initial Defendants in its Original Complaint. *Compare* Doc. 1, Compl. *with* Doc. 119, SAC.

On October 12, 2023, Joined Defendants filed their Answer and Original Counterclaims, as well a motion to dismiss the SAC, which the Court addresses in a separate order. Docs. 131, 132. Philips moved to dismiss Joined Defendants' Original Counterclaims, contending that they were time-barred or otherwise insufficiently pled under Federal Rule of Civil Procedure 12(b)(6). Doc. 133. In response, Joined Defendants filed the instant Amended Counterclaims pursuant to Federal Rule of Civil Procedure 15(a)(1). *See* Docs. 148. The Amended Counterclaims assert claims against Philips for (i) monopolization under 15 U.S.C. § 2 (the "Sherman Act"), (ii) attempted monopolization under the Sherman Act, (iii) tortious interference with prospective business relations, (iv) business disparagement, (v) defamation, (vi) unfair competition, and (vii) copyright misuse. *See* Doc. 148, Am. Countercls., ¶¶ 32-94.

Philips has moved to dismiss Joined Defendants' Amended Counterclaims, reasserting its contentions that the counterclaims are time-barred and inadequately pled under Rule 12(b)(6). *See* Doc. 155, Mot. Br. Joined Defendants respond that their counterclaims are timely because they are all compulsory. Doc. 160, Resp., ¶ 21. Because the counterclaims are compulsory, Joined Defendants argue, the Court should use the filing date of the Original Complaint when evaluating

the statute of limitations for the Amended Counterclaims. *Id.* ¶¶ 16–21. Further, assuming their claims are not time-barred, Joined Defendants contend their amended counterclaims are adequately pled. *Id.* ¶¶ 27–46. The Court addresses each argument in turn.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). When well-pleaded facts fail to meet this standard, "the complaint

has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

The burden of proof for a statute of limitations affirmative defense is on the party pleading it. *See id.* at 256; *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004).

## III.

## ANALYSIS

The Court will first address whether Joined Defendants' Amended Counterclaims are time-barred and then turn to the adequacy of their pleading. Determining the timeliness question requires assessing whether each counterclaim is compulsory or permissive. As to the counterclaims that are compulsory, the Court will address Philips' argument that the counterclaims still time-barred because they are not tolled, and Joined Defendants' alternative argument that the counterclaims relate back to the Original Complaint. The Court will then address whether the remaining, permissive counterclaims are time-barred and adequately pled.

*A.  Statute of Limitations*

Under Federal Rule of Civil Procedure 13(a), a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter" of a plaintiff's claim. When determining whether a claim and counterclaim arise out of the same transaction, the court should consider:

> (1) Whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim.

*Tank Insulation Int'l, Inc. v. Insultherm Inc.*, 104 F.3d 83, 85–86 (5th Cir. 1997) (citation omitted) ("*Tank*"). An affirmative answer to any one of these four questions renders the counterclaim compulsory. *Tank*, 104 F.3d at 86. As to the last inquiry, a logical relationship exists "when the counterclaim arises from the same 'aggregate of operative facts' in that the same operative facts serve[] as the basis of both claims." *RPV, LTD. v. Netsphere, Inc.*, No. 3:16-CV-02778-N, 2017 WL 7520611, at *2 (N.D. Tex. Aug. 9, 2017) (Godbey, J.) (quoting *Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979)), *aff'd sub nom. RPV, Ltd. as Tr. for Vill. Tr. v. Netsphere, Inc.*, 771 F. App'x 532 (5th Cir. 2019).

Philips argues the amended counterclaims are permissive, not compulsory, because they fail to satisfy the fourth *Tank* inquiry: the logical relations test. Doc. 155, Mot. Br., ¶¶ 13–14. According to Philips, its claims depend "entirely on [Joined] Defendants' hacking and the violations of intellectual property law" while the amended counterclaims "concern "Philips' alleged acts toward all third-party servicers." *Id.* ¶ 14. Philips does not address the three other *Tank* questions. Joined Defendants respond that their counterclaims are compulsory in satisfaction of all four *Tank* questions because the "same 'access control mechanism'" is at issue in the SAC and the Amended Counterclaims. Doc. 160, Resp., ¶ 18.

Having carefully reviewed the pleadings, the Court finds that certain counterclaims are compulsory while others are permissive. Joined Defendants' monopoly, attempted monopoly, and tortious interference with prospective business relations counterclaims are all compulsory because, at the very least, the Court finds they satisfy the logical relations test. *See Tank*, 104 F.3d at 86; *RPV, LTD.*, 2017 WL 7520611, at *2. In contrast, the defamation and business disparagement counterclaims do not satisfy any of the four *Tank* questions, and therefore they are permissive. The

Court does not address whether the unfair competition counterclaim is time-barred because Philips has not sufficiently raised such an argument. *See generally* Doc. 155, Mot. Br.

1.  Compulsory Counterclaims

Joined Defendants' Sherman Act counterclaims—monopoly and attempted monopoly—have a logical relationship to Philips' federal claims[2] because they are all based upon the "same operative facts." *Tank*, 104 F.3d at 85–86. Joined Defendants correctly identify that Philips' security restrictions to its MRIs provide the necessary overlap between Philips' claims and the amended counterclaims. Doc. 160, Resp., ¶ 19. Philips' federal claims hinge on Joined Defendants' alleged misappropriation and misuse of Philips' CSIP information. *See* Doc. 119, SAC, ¶¶ 66–108. Philips provides individuals with access to varying "level[s]" of CSIP depending on the person's role and contractual terms. *Id.* ¶ 29. Philips secures its level of access using the IST, which "generates a user-specific IST certificate" which "specifies the tools the user is entitled to access." *Id.* ¶ 33. Philips alleges that Joined Defendants accessed fake IST certificates to improperly access CSIP information. *See id.* ¶¶ 47–56. The IST certificate function as the secure "key card" providing user-specific access to the CSIP material. *Id.* ¶ 33. Philips alleges Joined Defendants impermissibly circumvented its security systems. In effect, Philips' claims depend on facts related to how its security of CSIP information functions.

Similarly, Joined Defendants' Sherman Act counterclaims arise from the same operative facts of Philips' security measures. Arguing that Philips has engaged in impermissibly monopolistic behavior, Joined Defendants allege they do not have access to Philips' MRIs, which would include CSIP information. *Id.* ¶ 26; Doc. 148, Am. Countercls., ¶ 10. They explain they are "locked out"

---

[2] Philips' federal claims are brought under the Computer Fraud and Abuse Act ("CFAA"), Digital Millennium Copyright Act ("DMCA"), and Defend Trade Secrets Act ("DTSA").

from Philips' MRIs because of Philips' security measures. Doc. 148, Am. Countercls., ¶ 10. Establishing that Philips' conduct is monopolistic requires Joined Defendants to show how Philips' security measures, in light of the SP5 update, operate. In satisfaction of the logical relation test, the Court deems the Sherman Act counterclaims compulsory. *See Nat'l Liability & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 835 (5th Cir. 2014) (finding compulsory counterclaim based on analysis of only logical relation test).

The Court finds Joined Defendants' tortious interference with prospective business relations counterclaim based on a theory of monopolistic conduct is also compulsory. The tortious interference with prospective relations counterclaim arises from the same factual predicate as the Sherman Act counterclaims, which the Court finds to be compulsory. Doc. 148, Am. Countercls., ¶¶ 56–63, 76–79. In particular, Joined Defendants allege Philips is tortiously "locking [Joined Defendants] out of Philips MRI Machines" in a larger plan to corner the "Market" for itself. *Id.* ¶¶ 58–59. The Sherman Act counterclaims satisfy the logical relation test for the same reasons that the tortious interference counterclaim satisfies the test.[3]

The Court does not find any other counterclaim to be compulsory, as will be discussed later in this opinion. The Court next addresses Joined Defendants' contention that the statutes of limitations of their compulsory counterclaims are all tolled. *See* Doc. 160, Resp., ¶¶ 16–21.

      i.     *Tolling*

Philips argues that, even if compulsory, the counterclaims' statutes of limitations cannot be tolled under the Fifth Circuit's holding in *North Cypress Medical Center Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 207 (5th Cir. 2015). Doc. 155, Mot. Br., ¶ 13; Doc. 161, Reply, ¶ 8.

---

[3] While a secondary factual predicate for the tortious interference counterclaim is that Philips' engaged in defamatory and disparaging conduct, this factual allegation does not negate satisfaction of the logical relation test.

Tolling refers to suspending or stopping the running of a statute of limitations; it is analogous to a clock stopping and then restarting. 51 AM. JUR. 2d Limitation of Actions § 150. An original pleading—here, Philips' Original Complaint—tolls the limitation period for claims asserted in subsequent, amended pleadings as long as the amended pleading does not allege a wholly new, distinct, or different transaction. *See id.* In *North Cypress Medical Center*, the Fifth Circuit unequivocally held that "compulsory counterclaims seeking affirmative relief are not tolled." 781 F.3d at 206–07. Philips asks the Court to apply the Fifth Circuit's holding here, meaning there's no stoppage time for the compulsory counterclaims' statute of limitations.

Whether *North Cypress Medical Center* is applicable depends on whether Joined Defendants' compulsory counterclaims seek affirmative relief. *Id.* at 206–07. The Fifth Circuit has long distinguished affirmative relief from another type of compulsory counterclaim: recoupment. *See id.* 206, n. 149. Recoupment "is a doctrine of intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction" from which the plaintiff's claim arises. *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 187–88 (S.D. Tex. 2007) (citation omitted), *aff'd*, 269 F. App'x 523 (5th Cir. 2008). In seeking recoupment, a counterclaim party seeks to reduce its own alleged liability. *Id.* For example, when the United States over-collected estate tax from a taxpayer for a particular transaction and then later sought to collect income tax from him for the same transaction, the taxpayer could have maintained a counterclaim to recoup his overpayment of estate tax *to offset* his income tax *liability. Bull v. United States*, 295 U.S. 247, 262–63 (1935) (emphases added). As a recoupment counterclaim is intended to "diminish or extinguish" the opposing party's demand, it is distinct from an affirmative cause of action in which

-10-

one seeks entitlement to separate relief. *Williams*, 504 F. Supp. 2d at 187–88; *Matter of Gober*, 100 F.3d 1195, 1207 (5th Cir. 1996).

Here, Joined Defendants' compulsory counterclaims are not asserted defensively because they are neither brought to diminish nor extinguish potential liability for Philips' claims. Philips alleges, *inter alia*, that Joined Defendants used and distributed fake digital certificates to hack into Philips' proprietary CSIP information "above Level 0" when Joined Defendants did not have authorization to access such information. *See* Doc. 119, Am. Compl., ¶¶ 47–56. Level 0 CSIP information is available to anyone in the United States, whereas higher levels of access are only provided to Philips' customers, trade partners, or employees. *Id.* ¶ 29. Joined Defendants' do not defend, rationalize, or even reference what information, if any, they have accessed following the SP5 update. Instead their compulsory counterclaims affirmatively raise only *Level 0* information, which is information they had access to before the alleged "lock-out." Doc. 148, Am. Countercls., ¶¶ 17–21. They allege they cannot access such information after Philips unlawfully imposed the SP5 update. *Id.* But Joined Defendants do not, for example, allege that Philips is improperly restricting all types of restricted CSIP information, *i.e.* Level 1, 2, or 3 information, which Joined Defendants are also accused of accessing. *Compare* Doc. 119, SAC, ¶¶ 29, 36–37 *with* Doc. 148, Am. Countercls., ¶¶ 17–21, 32–63. As a result, Joined Defendants' compulsory counterclaims do not serve to diminish liability for Philips' federal claims targeting improper access to Level 1, 2, or 3 information. Nor are Philips's claims extinguished through the compulsory counterclaims. *See Matter of Gober*, 100 F.3d at 1207 (5th Cir. 1996). If Philips was found to be impermissibly monopolistic, its claims that Joined Defendants hacked its MRIs and accessed historically restricted CSIP information (*above* Level 0) would remain wholly viable. *Compare id.* at 23–24 *with*

Doc. 119, SAC, 31. Joined Defendants' compulsory counterclaims raising a monopolistic lock-out therefore are not brought for recoupment.

The Court finds that Joined Defendants seek affirmative relief through their compulsory counterclaims. From Philips' alleged monopolistic lock-out, Joined Defendants assert their own "business and trade" injury as well as lost "customers, potential customers, income, market position, and reputation." Doc. 148, Am. Countercls., ¶¶ 42, 55, 61, 79. They do not seek to diminish their own alleged liability to Philips, *Williams*, 504 F. Supp. 2d at 187–88; *Matter of Gober*, 100 F.3d 1195, 1207 (5th Cir. 1996), rather they seek separate damages and attorneys' fees for their compulsory counterclaims. As a result, the compulsory counterclaims are subject to *North Cypress Medical Center*, and their statutes of limitations are not tolled. 781 F.3d at 206–07.

The remaining question is whether Philips' compulsory counterclaims of monopoly, attempted monopoly, and tortious interference are time-barred.

   ii.  *Accrual of Compulsory Counterclaims Seeking Affirmative Relief*

The monopoly and attempted monopoly counterclaims are "forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15(b). "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). Joined Defendants' counterclaims therefore accrued on December 18, 2018 when Philips started "issuing field change orders" to its engineers to "implement a series of firmware updates" called "SP5" on Philips' MRIs. *See* Doc. 148, Am. Countercls., ¶ 17. The Supreme Court, in *Zenith Radio Corporation*, focuses on an action as the point of accrual. Philips' action of issuing change orders,

as opposed to a mere decision to issue orders in the future, is the first affirmative step Philips took that harmed Joined Defendants' business. *Zenith Radio Corp.*, 401 U.S. at 338.

Joined Defendants contend that their claims accrued in February 2019 when Philips' engineers began installing SP5 onto Philips MRIs. Doc. 160, Resp., ¶ 22. The installation is what injured them by "excluding [them] from the Market." *Id.* However, the Supreme Court's precedent focuses on the objective act that causes an injury, not the injured party's subjective experience of harm. *Zenith Radio Corp.*, 401 U.S. at 338. Joined Defendants therefore needed to bring the Sherman Act counterclaims by December 18, 2022, within four years from Philips' issuances of change orders, but they did not. 15 U.S.C. § 15(b). Even if the claims accrued in February 2019, they would still be untimely as Joined Defendants' Original Counterclaims were filed on October 12, 2023. There are no later overt acts specified in the Amended Counterclaims to merit describing anything more than a continuation of earlier overt acts. *See Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 197 (5th Cir. 2021) ("These allegations do not restart the statute of limitations because they did not describe a specific act or word contributing to the conspiracy."). Tortious interference with prospective business relations claims are subject to limitations period of two years. TEX. CIV. PRAC. & REM. CODE § 16.003. Therefore, Joined Defendants' tortious interference counterclaim arising from the monopoly allegations are also time-barred.

The Court will not entertain Joined Defendants' unsupported request to have these counterclaims seeking *affirmative relief* relate back to Philips' Original Complaint. Doc. 160, Resp., ¶ 21. Their reference to *Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 F. App'x 327 (5th Cir. 2014) is unavailing. In *Songcharoen*, the Fifth Circuit contemplated whether a defensive

counterclaim seeking a set-off of liability was compulsory and thus related back to the original pleading. *Id.* at 340–41. *Songcharoen* predates the Fifth Circuit's *North Cypress Medical Center* opinion, and does not address the theory of relation back with regards to compulsory counterclaims seeking affirmative relief.

Based on the foregoing, the Court concludes that the monopoly, attempted monopoly, and tortious interference with prospective relations counterclaims are time-barred. Philips' motion to dismiss these claims is **GRANTED**.

2.    Permissive Counterclaims

Philips also challenges Joined Defendants' counterclaims for defamation, business disparagement, and copyright misuse as time-barred and inadequately pled. Joined Defendants respond that these claims are timely because they are tolled by the Original Complaint, or alternatively because they relate back to the filing of the Original Counterclaims. Doc. 160, Resp., ¶¶ 10–21. The Court dismisses the copyright misuse action as improperly asserted and dismisses the two remaining counterclaims as inadequately pled, though they are timely.

The Court previously adopted the Magistrate Judge's Findings and Recommendation dismissing Joined Defendants' copyright misuse defense because copyright misuse can only be used as a defense to a copyright infringement claim, which Philips has not brought. *See* Doc. 182, Order, 1; Doc. 179, F and R., 6. The cases Joined Defendants raise acknowledge this limit to the copyright misuse doctrine. *E.g.*, Doc. 159, Resp., ¶ 44. Thus, Philips' Motion as to Joined Defendants' copyright misuse counterclaim is **GRANTED**.

The Court finds the remaining two counterclaims, defamation and business disparagement, are both permissive and thus tolling does not apply. With respect to the first of the

four *Tank* questions, neither defamation nor business disparagement concern largely the same issues of fact and law as Philips' claims. These counterclaims will delve into the nature of the "derogatory and defamatory statements about [Joined Defendants] to customers, including, but not limited to, Alpha, and potential customers" that Philips made, while Philips' claims focus on Joined Defendants' alleged hacking. Doc. 148, Am. Countercls., ¶¶ 65, 71. The second *Tank* question also has a negative answer as there is no res judicata issue here. As for the third *Tank* question, there is not a substantial overlap of evidence between these counterclaims and Philips' claims most obviously because they arise from different time periods. The evidence of defamation and business disparagement counterclaims will arise out of Philips' statements to Joined Defendants' customers in "October 2022," whereas Philips' claims will concern evidence originating as early as 2018 of Joined Defendants' use of fake IST certificates. *Id.*; *see Trugreen Ltd. P'ship v. Rogers*, No. 3:97-CV-0606-H, 1998 WL 136585, at *3 (N.D. Tex. Mar. 18, 1998) (Sanders, S.J.).

Finally, the Court is unpersuaded that the defamation and business disparagement counterclaims satisfy the logical relation test under the fourth *Tank* question. These counterclaims focus on Philips' recent communications with Joined Defendants' current and prospective customers whereas Philips' claims of hacking and misappropriation of trade secrets focus on Joined Defendants' relationships with third-parties years earlier. The Court cannot discern how they arise out of the same operative facts. A helpful point of comparison can be found in *Rogers*. 1998 WL 136585. There, the district court found slander and business disparagement counterclaims were permissive because they were (i) substantively "separate and distinct" from the plaintiff's trade secrets claim, and (ii) temporally disconnected to the facts supporting plaintiff's

claim. *Id.* at *3. Here, the alleged defamatory and disparaging statements are that Joined Defendants are illegally servicing Philips MRIs, they cannot legally service the MRI Machines, and they have stolen Philips' proprietary information. Doc. 148, Am. Countercls., ¶¶ 65, 71. Such statements are distinct both substantively and temporally from Philips' claims. Where alleged defamatory statements trace back to particular factual allegations in a plaintiff's complaint, they can be said to logically relate to the plaintiff's claims. *See Underwriters at Int. on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 483 n.2 (5th Cir. 1996) (finding compulsory alleged defamatory and disparaging statements matching plaintiff's claims that the defendant damaged the plaintiff's drilling equipment). Here, Philips is not alleged to have made statements paralleling the facts of its own claims. Rather, Philips' alleged defamatory statements are merely blanket statements of illegality.  Having found no affirmative answers to the *Tank* questions, the Court concludes the defamation and business disparagement claims are permissive.

The defamation and business disparagement counterclaims must have been brought "no later than one year after the day the cause of action accrue[d]." TEX. CIV. PRAC. & REM. CODE § 16.002(a). To avoid having their counterclaims barred, Joined Defendants also argue that their Amended Counterclaims should relate back to their original counterclaims under Federal Rule of Civil Procedure 15(c). Doc. 159, Resp., 4–7. The Fifth Circuit has held that relation back under Rule 15(c) is a procedural law and therefore applies in federal court. *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir. 1987) ("Therefore, we conclude that Rule 15(c), the federal relation back rule, applies and the district court erred in applying the Texas relation back rule."). Rule 15(c) permits an amendment to relate back when the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set

forth in the original pleading." Here, the amended counterclaims and Joined Defendants' original counterclaims include defamation and business disparagement. *See* Doc. 148, Am. Countercls., ¶¶ 13–24. While Joined Defendants have amended their counterclaims by pleading with greater particularity, the original pleading sufficiently notified Philips of these causes of action. Thus, the Amended Counterclaims relate back to the Joined Defendants' original counterclaims filed on October 12, 2023. Reading their pleadings in the light most favorable to Joined Defendants, the Court construes the permissive counterclaims arising in "October 2022" to have accrued within the one-year limitations period. Doc. 148, Am. Countercls., ¶¶ 65, 71; *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Accordingly, Philips' Motion to Dismiss the defamation and business disparagement counterclaims as time-barred is **DENIED**.

B.   *Adequacy of the Remaining Pled Claims*

Philips contends that the amended counterclaims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Doc. 155, Mot. Br., ¶¶ 29–62. To survive Rule 12(b)(6) motion, the remaining counterclaims—unfair competition, defamation, and business disparagement—must be pled with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

1.   Defamation & Business Disparagement Claims

In support of its defamation and business disparagement counterclaims, Joined Defendants assert that as recently as October 2022:

> Philips representatives made derogatory and defamatory statements about [Joined Defendants] to customers, including, but not limited to, Alpha, and potential customers of [Joined Defendants] including, but not limited to, statements that [Joined Defendants] are *unable to legally service Philips MRI Machines, that [Joined Defendants]  are conducting illegal activity by servicing Philips MRI Machines, and/or that [Joined Defendants] have stolen Philips alleged proprietary information.*

Doc. 148, Am. Countercls., ¶¶ 65, 71 (emphasis added).

To establish a cause of action for defamation under Texas law, Joined Defendants must show Philips "(1) published a statement, (2) that was defamatory as to [Joined Defendants], (3) 'while acting with either actual malice, if the [victim] was a public official or public figure, or negligence, if the [victim] was a private individual, regarding the truth of the statement.'" *Nelson v. Lowe's Home Centers, Inc.*, No. 3:11-CV-1497-B, 2012 WL 3731092, at \*6 (N.D. Tex. Aug. 29, 2012) (Boyle, J.) (quoting *Hill v. Anderson*, 420 F. App'x 427, 434 (5th Cir. 2011)). "A statement is published if it is communicated to a 'third person who is capable of understanding its defamatory meaning and in such a way that the person did understand its defamatory meaning.'" *Cooper v. Harvey*, 2016 WL 4427481, at \*15 (N.D. Tex. Aug. 21, 2016) (Boyle, J.) (quoting *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no pet.)). Further, defamation claims "must specifically state the time and place of the publication," as well as the speaker. *Id.* (quoting *Jackson v. Dallas Indep. Sch. Dist.*, No. Civ. A. 3:98–cv–1079, 1998 WL 386158, at \*5 (N.D. Tex. July 2, 1998) (Fitzwater, J.); *see also Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir. 2007).

Joined Defendants fail to allege facts sufficient to plead a defamation counterclaim. For the purposes of this Motion, there are three alleged defamatory or derogatory statements. While Joined Defendants adequately allege Philips made the statements to Alpha in October 2022, they do not properly plead the statements to be published such that the Court may reasonably infer "that [Philips] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, there are no facts pled as to how Alpha is "capable of understanding [the statements'] defamatory meaning." *Id.* There are no facts pled as to how Philips communicated the statements to Alpha "in such a way

that the person did understand its defamatory meaning.'" *Cooper*, 2016 WL 4427481, at *15. For example, Joined Defendants fail to plead the place in which the statements were published or the person who supposedly made them. *Nelson*, 2012 WL 3731092, at *6. The statements are generic, and backed by insufficient facts to support that they were published. The Court therefore **GRANTS** Philips' motion as to the defamation counterclaim.

Since Joined Defendants are "required to plead that the statements were published for either the claim of business disparagement or defamation, [their] claim for business disparagement . . . is deficient and [also] must be dismissed." *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *6 (N.D. Tex. Dec. 29, 2015) (Fish, J.). Philips' Motion as to the business disparagement claim is therefore **GRANTED**. In effect, to the extent the tortious interference counterclaim was based on Joined Defendants' defamation and business disparagement counterclaims, it also fails to state a claim.

### 2.   Unfair Competition

Philips argues the unfair competition claim should be "dismissed with prejudice because it is derivative of [Joined Defendants'] other claims, which are barred by the statute of limitations and fail as a matter of law." Doc. 155, Mot. Br., ¶ 60; *see also* Doc. 161, Reply, ¶ 24. Unfair competition relies on an "independent substantive tort or other illegal conduct." *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–5 (Tex. App.—Dallas 1989, writ denied). All of Joined Defendants' claims have been dismissed as time-barred or inadequately pled under Rule 12(b)(6). Therefore, Court **GRANTS** the Motion as to this counterclaim.

IV.

CONCLUSION

Joined Defendants' Sherman Act counterclaims, and the tortious interference with prospective relations counterclaim based on a theory of monopoly are **DISMISSED** as time-barred. The defamation and business disparagement counterclaims, as well as the tortious interference with prospective relations counterclaim based on a theory of defamation and disparagement are **DISMISSED** for failure to state a claim. Consequently, the unfair competition counterclaim is also **DISMISSED** for failure to state a claim. Finally, Philips' Motion to Dismiss Joined Defendants' original counterclaims (Doc. 139) is **DENIED** as **MOOT**.

The Court notes that Initial Defendants' Original Counterclaims, filed on December 6, 2022, are nearly identical to Joined Defendants' Original Counterclaims, filed on October 12, 2023.[4] *Compare* Doc. 45, Initial Defs' Orig. Countercls., 18–35 *with* Doc. 134, Joined Defs' Orig. Countercls. Further, Initial Defendants' Amended Counterclaims, filed on February 16, 2023, are nearly identical to Joined Defendants' Amended Counterclaims, filed on November 20, 2023. *Compare* Doc. 65, Initial Defs' Am. Countercls. *with* Doc. 148, Joined Defs.' Am. Countercls.

While the Court did not address whether Initial Defendants' Original Counterclaims and Amended Counterclaims were adequately pled, Initial Defendants and defense counsel received notice of potential deficiencies in these pleadings from Philips' first two motions to dismiss. *See generally* Docs. 58, 71. Philips has raised similar arguments in two more motions to dismiss Joined Defendants' Original Counterclaims and Amended Counterclaims. *Compare* Doc. 59 *with* Doc.

---

[4] Joined Defendants have merely changed all references of the filing part from "Image" to "Counter Plaintiffs."

140; *compare* Doc. 72 *with* Doc. 155. All of the Defendants share the same director, Initial Defendant Shannon, and the same legal counsel.

The Court presumes Defendants have stated their best case because Initial Defendants have not requested leave to file second amended counterclaims, [5] nor have Joined Defendants sought leave to amend their Amended Counterclaims. *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012) (affirming dismissal with prejudice). Despite receiving notice of potential deficiencies through multiple motions to dismiss, and having multiple opportunities to amend their counterclaims, Joined Defendants have failed to correct these deficiencies. The foregoing history and analysis supports dismissal of Joined Defendants' Amended Counterclaims with **PREJUDICE**.

SO ORDERED.

SIGNED: June 26, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[5] Initial Defendants never sought leave to file second amended counterclaims after Philips filed the Second Amended Complaint. Therefore, the only operative counterclaims come from Joined Defendants.