UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHILIPS NORTH AMERICA LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0147-B |
| | § | |
| IMAGE TECHNOLOGY | § | |
| CONSULTING, LLC; MARSHALL R. | § | |
| SHANNON, IMAGE TECHNOLOGY | § | |
| CONSULTING II, LLC; and AXIOM | § | |
| IMAGING INC., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION & ORDER</u>

Before the Court is Plaintiff Philips North America LLC ("Philips")' Motion for Spoliation Sanctions (Doc. 285).[1] The Court held an evidentiary hearing for this Motion on October 16, 2024, and October 17, 2024. For the following reasons, the Court **GRANTS** the Motion and awards Philips $6.05 million in damages.[2]

I.

BACKGROUND

This case is about MRI machines. Philips manufactures MRI machines and sells them to healthcare providers like hospitals. Doc. 242, Pl.'s App'x, 1. Philips also offers maintenance and repair services for Philips MRI machines. *Id.* Philips is not the only entity that provides such services for its MRI machines. There are several companies called Independent Service Operators ("ISOs")

---

[1] Document 285 was filed under seal. Philips later filed a copy of the Motion for Spoliation Sanctions with several redactions on the public docket. Doc. 288, Mot. Sanctions.

[2] The parties have also filed cross-Motions for Summary Judgment, several Motions to Strike, and a litany of Motions to Seal. The Court will address these Motions in separate Orders.

that also provide these services. Defendants Image Technology Consulting II ("Image II") and Axiom Imaging, Inc. ("Axiom") are ISOs that contract with the owners of the MRI machines to provide maintenance and repair services on Philips MRIs. Doc. 246, Defs.' App'x, 2. Defendant Marshall Shannon owns these two companies. *Id.* at 1.

A.      *Philips Security Measures*

Philips MRI machines contain complicated software that enables them to operate efficiently. Philips considers some of the software tools on these machines to be proprietary trade secrets and has implemented strict security measures to protect them. Doc. 242, Pl.'s App'x, 1–2. Philips classifies its tools based on how sensitive Philips considers the software. Doc. 243, Pl.'s Sealed App'x, 192–93. The more sensitive the information, the higher its Customer Service Intellectual Property ("CSIP") classification. *See id.* at 193. For example, CSIP Level 0 information and tools are generally available to any party who asks Philips for permission to access them. *Id.* However, only Philips employees or companies that entered into licensing agreements with Philips have access to CSIP Level 1 tools. *Id.* And generally only Philips' Field Service Engineers can access CSIP Level 2 tools— Philips reserved CSIP Level 2 classification for the most commercially sensitive information. *Id.*

Under the company's security measures, Philips assigns every authorized user a CSIP classification. *Id.* at 17. Philips then issues the user an Integrated Security Tool ("IST") certificate granting them access to all information and tools that fall under their assigned CSIP classification. *Id.* When the user inputs their IST certificate onto a Philips MRI, the system allows them to access only the information their certificate says they are authorized to access. *See id.* Thus, if someone's IST certificate classified them as CSIP Level 1, they would only be authorized to access materials on the MRI machine that are designated CSIP Level 1 or lower. Philips MRI machines contain 511

tools that the company classifies as CSIP Level 1 or higher. Doc. 243, Pl.'s Sealed App'x, 76.

For many years, ISOs were able to provide their maintenance and repair services without needing permission from Philips. *Id.* at 20. Philips originally classified many of the tools the ISOs used to provide their services ("Service Tools") as CSIP Level 0. *Id.* at 20–21. The tools Defendants used to provide the repair and maintenance services ("Service Tools") were on the MRI machines' installation menu. *Id.* at 21. Defendants could access these Service Tools freely with their CSIP Level 0 classification. *See id.* at 21. However, Philips implemented a new software update in 2019, called Software Pack 5 ("SP5"), which changed the Service Tools' classification to CSIP Level 1. *Id.* at 20–21. After the SP5 update, the Service Tools were no longer accessible on the MRIs' installation menu. *Id.* Thus, Defendants could not use the Service Tools without getting permission from Philips, even if the owners of the MRI machines wanted to hire the Defendants to provide maintenance and repair services on their MRI machines.

B.    *Defendants' Circumvention of Philips Security Measures*

Defendants knew that they would not be able to access the Service Tools on any Philips MRI machine that had installed the SP5 software. *See* Doc. 322, Transcript, 184. Because they wanted to continue providing maintenance services to their customers, Defendants obtained a fake IST certificate to bypass Philips' security measures. *See* Doc. 242, Pl.'s App'x, 354. This fake IST certificate tricked Philips' security measures into the thinking the user was a Philips Field Service Engineer named Donald Trump and provided Defendants access to all information classified as CSIP Level 2 or lower. Doc. 243, Pl.'s Sealed App'x, 267–68. Importantly, Philips did not issue the Donald Trump IST certificate and Philips never authorized Defendants to access any information other than CSIP Level 0. Doc. 242, Pl.'s App'x, 364–65.

One of Philips' expert witnesses, Dr. Alessandro Orso, conducted forensic analysis attempting to determine how often Defendants circumvented Philips' security measures and what tools the Defendants used when circumventing the security measures. Doc. 323, Transcript, 45–51. Dr. Orso would look at the log files that were available to him, and by compiling the information contained in .dongle.his files, system log files, and the service log files, he could piece together who accessed the MRI machine, how they accessed the machine, when they accessed the machine, and what tools they used when servicing the machine. *See id.*

Philips' damages expert, W. Todd Schoettelkotte, performed economic analysis to determine what reasonable royalties Philips would recover from licensing all 511 CSIP Level 1 or higher tools. *See* Doc. 323, Transcript, 162–65 (discussing the reasonable royalties for all trade secrets that Defendants had access to when they used a fake certificate). Schoettelkotte testified that he believes the reasonable royalties for licensing all 511 tools is $12.1 million. *Id.* at 136–37.

C.    *Defendants' Deletion of Log Files*

In general, whenever someone runs tests or provides services on an MRI machine, they create several different types of log files, four of which are relevant here: (1) a ".dongle.his file"; (2) a system log; (3) a "setupregistry" file; and (4) service log files. Doc. 309, Defs.' App'x, 1842. These log files create a record of who accessed the machine and what they did on the machine. *See* Doc. 323, Transcript, 45.

Philips MRI machines also had software that allowed Philips to monitor the machines remotely. Doc. 243, Pl.'s Sealed App'x, 288. The remote monitoring software would send Philips daily reports consisting of as many as 90 different types of log files detailing who accessed the MRI machine and which software tools they used on the machine. Doc. 322, Transcript, 59. When

remote monitoring was enabled, Philips would receive reports of logs files that effectively told Philips who accessed the MRI machine, how they accessed the machine, and which tools they used on the machine. *See id.* The remote monitoring software could be turned off, however, and Defendants would regularly turn it off when servicing their customers' MRI machines. Doc. 309, Def.'s App'x, 1843. In fact, Shannon testified that he would "scream . . . at the top of [his] lungs" for his employees to turn off Philips' remote monitoring software. Doc. 242, Pl.'s App'x, 413.

Shannon testified that he deleted log files to prevent Philips from knowing when and where they were working on MRI machines. *Id.* at 1843. He also stated in an affidavit that he only ever deleted the service log files. *Id.* However, at the hearing, Shannon admitted that he also deleted ".dongle.his" files when he would install new MRI machines. Doc. 322, Transcript, 196. He also testified that he told between 50 to 150 people to delete log files in the past five years. Doc. 242, Pl.'s App'x, 413.

At the evidentiary hearing, Shannon admitted to continuing to delete log files after this lawsuit began. Doc. 322, Transcript, 175. He also said that he did not try to take pictures or make copies of the files he deleted. *Id.* at 176. Additionally, there is evidence that Defendants continued to delete the log files after Philips filed a motion to compel production of the log files. Philips moved to compel all log files in Defendants' possession in January 2023, Doc. 54, Mot. Compel, and Defendants argued that the logs files were irrelevant to the lawsuit. Doc. 56, Pl.'s App'x, 36. In February 2023, while the Motion to Compel was pending, Shannon told Roger West, one of his employees, to turn off Phillips remote monitoring and to delete service logs. Doc. 286, Pl.'s Sealed App'x, 15–16. As a result of these continuing deletions, it is not clear how many log files Defendants deleted or how many times Defendants deleted log files during the litigation.

D.      *Shannon's Credibility Problems*

At the hearing, the Court found that Shannon's testimony was not credible. During the hearing, Shannon said that he deleted the log files because he did not want Philips, his competitor, to know when and where Defendants were servicing Philips MRI machines. Doc. 322, Transcript, 192; *see also* Doc. 308, Resp., 5. But Shannon also testified that he deleted the log files as part of routine maintenance because the Philips installation manual instructed him to do so. Doc. 322, Transcript, 192–93. Defendants had not produced or identified this installation manual before the hearing. On the second day of the hearing, the Philips Director of CSIP, Jacqueline Dickson, testified that the installation manual Shannon was referencing did not instruct users to delete the files that Philips accuses Shannon of deleting. Doc. 323, Transcript, 24.

Shannon also gave testimony that contradicted his prior deposition testimony. For example, Shannon testified in his deposition that he had accessed a Philips MRI machine and deleted a service log file in a service logbook even when he was not working on the MRI machine. Doc. 39, Def.'s App'x, 179. However, Shannon said at the hearing that he had never deleted a service log file when he was not working on an MRI machine. Doc. 322, Transcript, 161. After being confronted with his prior testimony, Shannon admitted to giving the prior testimony under oath. *Id.* at 162.

Additionally, Shannon stated in an affidavit that he had never deleted any .dongle.his files on a Philips MRI machine. *See* Doc. 309, Def.'s App'x, 1843; *see also* Doc. 322, Transcript, 196. But Shannon testified at the hearing that he deleted .dongle.his files when he was installing an MRI machine. Doc. 322, Transcript, 196. Shannon attempted to defend this inconsistency by explaining that it was important to delete .dongle.his files when moving an MRI machine to a new facility. *Id.* at 197. However, the Court did not find Shannon's explanation of the inconsistency credible as Dr.

Orso testified that the .dongle.his files contain information detailing the history of the machine that would remain useful even after an MRI machine was moved to a new facility. Doc. 323, Transcript, 65–66. Thus, Dr. Orso explained, it is common practice for users to make a backup of any files containing potentially useful information before deleting them. *Id.*

In support of Shannon's belief that he needed to delete the log files as part of routine maintenance of MRI machines, Shannon presented two pieces of evidence that he had not identified before the evidentiary hearing. First, he presented a Philips installation manual from 2007 providing details on how to delete certain log files.[3] Second, he introduced an error message that had appeared on one of his customer's MRI machines that told the user to delete certain log files because the storage disk was low.[4]

Dickson provided testimony on both pieces of supposedly exculpatory evidence. She testified that the 2007 installation manual only gave instructions on how to delete different types of log files than the files Philips alleges that Shannon deleted. Doc. 323, Transcript, 24. Dickson then explained that the error message should never appear on a Philips MRI machine that is being used in the clinical setting, and Shannon testified that he only worked on MRI machines being used in the clinical setting. Doc. 322, Transcript, 120, 149.

E.      *Philips Moves for Spoliation Sanctions.*

Philips moves for spoliation sanctions, arguing that without the log files or the remote monitoring data, Philips cannot prove exactly what trade secrets Defendants used on the Philips

---

[3] The 2007 installation manual was Plaintiff's Exhibit 32 at the evidentiary hearing. *See* Doc. 323, Transcript, 21–22. This document had not previously been filed and is not contained within any of the numerous Appendices available on CM/ECF.

[4] The error message was Defendants' Exhibit 17 at the evidentiary hearing. *See* Doc. 322, Transcript, 106. This document had not previously been filed and is not contained within any of the numerous Appendices available on CM/ECF.

MRI machines or what damages Philips incurred for all its claims. *See generally* Doc. 285, Mot.

Sanctions. Philips has six remaining claims: (1) a Computer Fraud and Abuse Act ("CFAA") claim;

(2) a Digital Millenium Copyright Act ("DMCA") claim; (3) a trade secrets misappropriation claim

under the Defend Trade Secrets Act ("DTSA"); (4) a trade secrets misappropriation claim under the

Texas Uniform Trade Secrets Act ("TUTSA"); (5) an unfair competition claim under Texas law; and

(6) a Texas common law fraud claim. Doc. 119, Am. Compl., ¶¶ 66–142.

Philips seeks several possibles remedies for the alleged spoliation. First, Philips requests that

the Court award Philips $12.1 million in reasonable royalty damages for its trade secrets claims. Doc.

288, Mot., 21–22. Alternatively, Philips moves to present its expert witnesses' damages model for its

trade secrets claim unchallenged. *Id.* at 22–25. The Court considers the Motion below.

## II.

### LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) allows a court to sanction a party if the following four

elements are satisfied: (1) there is electronically stored information ("ESI") that "should have been

preserved;" (2) the ESI was lost (3) "because a party failed to take reasonable steps to preserve it;"

and (4) the lost ESI "cannot be restored or replaced through additional discovery." The party moving

for spoliation sanctions has the burden of establishing each element of Rule 37(e). *Grant v. Gusman*,

No. CV 17-2797, 2020 WL 1864857, at *8 (E.D. La. Apr. 13, 2020). In cases where the party deleted

the ESI with the intent to deprive their opponent of using the information in litigation, district

courts may award enhanced sanctions such as granting default judgment, dismissing the case, or

imposing an adverse inference. FED. R. CIV. P. 37(e)(2).

A court may also use its inherent authority to sanction a party if: (1) the spoliating party

"controlled the evidence and [was] under an obligation to preserve it at the time of destruction;" (2) the party intentionally destroyed the evidence; and (3) the moving party shows "the spoliating party acted in bad faith." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573–74 (5th Cir. 2020). A federal court should only use its inherent authority to sanction if "there is no statute or rule that adequately addresses the conduct." *Id.* at 573; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991).

## III.

## ANALYSIS

The Court concludes that Defendants should be sanctioned under Federal Rule of Civil Procedure 37(e)(2) for spoliating electronically-stored information ("ESI") and the Court grants Philips default judgment on its misappropriation of trade secrets claims. However, the Court concludes that Philips should not recover its entire reasonable royalties damages model. Instead, the Court will award Philips $6.05 million in damages as a sanction.

A.    *The Court Will Sanction Defendants for Spoliation of Evidence Under Federal Rule of Civil Procedure 37(e)(2).*

Philips moves to sanction Defendants for destroying evidence under both Federal Rule of Civil Procedure 37(e)(2) and the Court's inherent power to sanction. After considering the evidence and the parties' arguments from the evidentiary hearing, the Court finds that Defendants should be sanctioned under Rule 37(e)(2) for destroying ESI.

Federal Rule of Civil Procedure 37(e) allows a court to sanction a party if the following four elements are satisfied: (1) there is ESI that "should have been preserved;" (2) the ESI was lost (3) "because a party failed to take reasonable steps to preserve it;" and (4) the lost ESI "cannot be restored or replaced through additional discovery." In cases where the party deleted the ESI with the

intent to deprive their opponent of using the information in litigation, district courts may award enhanced sanctions such as granting default judgment, dismissing the case, or imposing an adverse inference. FED. R. CIV. P. 37(e)(2).

 1. <u>Philips Has Proven All Four Predicate Elements of Rule 37(e).</u>

First, Defendants had an obligation to preserve the log files because they had control over the files when they serviced the machines. The duty to preserve extends to anything that is "likely to have discoverable information that the disclosing party may use to support its claim or defenses." *Doe v. Northside I.S.D.*, 884 F. Supp. 2d 485, 495–96 (W.D. Tex. 2012) (quotations omitted). Parties have an obligation to preserve evidence that is within their possession, custody, or control. *See* FED R. CIV. P. 34(a); *see also Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) (noting that the duty to preserve extends to information covered by Federal Rule of Civil Procedure 34). Here, Defendants had access to the log files when the Defendants worked on the MRI machines that stored the files. Doc. 246, Defs.' App'x, 2. Thus, Defendants had control over the ESI.

Defendants argue they did not have a duty to preserve any ESI because the log files were never within their possession. Doc. 308, Resp., 11–12. This argument fails because control is "construed expansively to include scenarios in which the responding party has the legal right or practical ability to obtain the information." *See Edwards v. 4JLJ, LLC*, No. 2:15-CV-299, 2018 WL 2981154, at *5 (S.D. Tex. June 14, 2018) (discussing control in the context of Rule 34's duty to disclose). Here, Defendants had the practical ability to access the log files when they worked on the MRI machines. Thus, the log files were within their control at the time Defendants deleted them.

Second, there is no meaningful dispute that ESI was lost when Defendants deleted the

service log files. Shannon admitted to deleting the log files and disabling the remote monitoring. Doc. 322, Transcript, 171, 175. Thus, the second element is satisfied. *See* FED. R. CIV. P. 37(e).

Third, Defendants failed to take reasonable steps to preserve the ESI by intentionally deleting the log files. Shannon admitted to intentionally deleting the log files after the lawsuit was filed. Doc. 322, Transcript, 175. Thus, the third element is satisfied. *See* FED. R. CIV. P. 37(e).

Fourth, Philips satisfied its burden of establishing that the lost ESI cannot be restored or replaced through additional discovery. Shannon and one of Defendants' employees, Roger West, each testified that they deleted service log files off the service logbooks. Doc. 310, Def.'s Sealed App'x, 1901. Shannon also testified that he continued to delete service log files after this litigation began. Doc. 322, Transcript, 175.

Defendants argue that the fourth element of Rule 37(e) cannot be established because the information contained in the log files that Defendants deleted was also available on the hard drives of the MRI machines. Doc. 308, Resp., 13. There are at least three other types of log files that also contain certain information that could help Philips determine what software tools Defendants used. *See* Doc. 323, Transcript, 46. These other log files are stored on the hard drives of the individual MRI machine. *See* Doc. 309, Def.'s App'x, 1842. Thus, according to Defendants, sanctions are not warranted because the information could have been obtained through third-party discovery. *Id.*

Rule 37(e) sanctions are not warranted if the deleted ESI can be replaced or restored through additional discovery. Several district courts around the country have refused to impose Rule 37 sanctions in cases where the deleted information could be obtained with third-party discovery. *See Envy Hawaii LLC v. Volvo Car USA LLC*, No. CV 17-0040, 2019 WL 1292288, at *3 (D. Haw. Mar. 20, 2019) ("Rule 37(e) sanctions are foreclosed if the purportedly 'lost' electronically stored

information may be retrieved from additional discovery or discovery from third-parties."); *Hugler v. Sw. Fuel Mgmt., Inc.*, No. 16 CV 4547, 2017 WL 8941163, at *8 (C.D. Cal. May 2, 2017) ("[I]f the despoiled information can be restored or replaced through additional discovery, the Court cannot impose sanctions under Rule 37(e)."). Accordingly, the Court will assume that Rule 37(e) does not authorize sanctioning a party for deleting ESI if the opponent could obtain the information from a third party.

The Court questions whether Philips would have found the other log files that Shannon claims to have never deleted for two reasons. First, the Court is not convinced that Philips would have even been able to find the hard drives supposedly containing the other log files. Dickson testified that she investigated a location in Alaska where Defendants provided repair services, but the MRI machine was no longer there, and Philips did not know its new location. Doc. 322, Transcript, 75–76. Thus, it seems likely that Philips would not have even been able to find the MRI machines storing the remaining log files.

Second, it seems very unlikely that Philips would have found the other three types of log files on the hard drives even if Philips managed to locate the MRI machines. As discussed above, Shannon admitted to deleting the service log files that were contained on service logbooks. Doc. 309, Def.'s App'x, 1843. While Defendants argue they did not delete the other three types of relevant log files, the only evidence supporting this argument is Shannon's testimony, and the Court did not find him credible. At the hearing, Shannon's testimony directly contradicted prior statements he made under oath on several occasions. And Shannon provided testimony strongly suggesting he deleted two types of log files that Defendants now argue could have been found on the hard drives. Shannon admitted to occasionally deleting .dongle.his files. Doc. 322, Transcript, 196. Additionally,

the error message that Shannon claimed was why he deleted log files said, "Please remove log files within login application program." Doc. 322, Transcript, 222. Shannon explained that this error message was referring to "system log files." *Id.* Because Shannon claims that his customers receiving this error message was one reason he deleted log files, it appears that this testimony means Shannon also admitted to deleting system logs.

But the Court will assume that Philips could have found all three of these log files if it had managed to track down the hard drives on all 100 MRI machines that Defendants serviced around the country. Even then, the information Philips needed could not be restored or replaced through additional discovery. At the hearing, Dr. Orso compared his forensic analysis to solving a puzzle. Doc. 323, Transcript, 45. Each of the .dongle.his files, service logbooks, setupregistry files, and system logs were a different piece in the puzzle. *See id.* If any of his puzzle pieces were missing, he would not be able to see the entire picture. *Id.* at 59. For example, Dr. Orso testified that if he only had the system log files but did not have the deleted service log files, he would only know which tools were used and when they were used, but he would not be able to determine who had accessed the MRI machine or how they accessed the machine. *Id.* Thus, to accurately determine whether Defendants circumvented Philips' security measures and used any trade secrets—i.e., to solve the puzzle—Dr. Orso needed each of these log files. And by deleting the service logs, Shannon removed a crucial piece to the puzzle which meant Dr. Orso could not determine everything that happened. *See* Doc. 323, Transcript, 59. Therefore, the fourth element of Rule 37(e)(2) is satisfied.

Defendants next argue that Philips has all the information it needs because Defendants produced every invoice they issued to their customers when working on Philips MRI machines. Doc. 308, Resp., 12–13. Thus, according to Defendants, Philips can compare the invoices with Philips'

records to determine when Defendants used an MRI machine and which software tools Defendants used on the machine. *See id.* This argument fails because the invoices do not include the serial number of the MRI machine, so Philips could not determine which machines Defendants serviced simply by examining the invoices. *See* Doc. 310, Def.'s App'x, 1890–98. Thus, the invoices are an insufficient replacement for the deleted log files.

Lastly, Dr. Orso testified that the invoices were insufficient for him to conduct his forensic analysis because they did not establish how Defendants accessed the machines or what work they performed on the machines. Doc. 323, Transcript, 62–63. He explained that the invoices could be useful for *corroborating* his analysis of log files, but that they could not *replace* the deleted log files. *Id.* at 61–63. Thus, the Court rejects Defendants' argument that the invoices contained all the information Philips needed. Therefore, the Court finds that the information Shannon deleted cannot be restored or replaced with additional discovery, and Rule 37(e) sanctions are justified here.

2. The Court Finds That Enhanced Sanctioned Are Warranted and Awards Philips Default Judgment on Its Misappropriation of Trade Secrets Claims.

Enhanced sanctions under Rule 37(e)(2) are warranted because the Defendants acted with the intent to deprive Philips of evidence in this litigation. Philips has the burden to demonstrate by a preponderance of evidence that Defendants acted with the necessary intent to impose enhanced sanctions under Rule 37(e)(2). *See BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, No. 3:22-CV-1981-L-BN, 2024 WL 1607065, at *13 (N.D. Tex. Apr. 12, 2024) (Horan, M.J.). The enhanced sanctions allowed under Rule 37(e)(2) are: "(A) presum[ing] that the lost information was unfavorable to the party; (B) instruct[ing] the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss[ing] the action or enter[ing] a default judgment." FED. R. CIV. P. 37(e)(2).

The Fifth Circuit imposes a heightened standard for litigation-terminating sanctions, such as granting default judgment or dismissing a case, and requires finding that "(1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation substantially prejudiced the opposing party; and (4) a lesser sanction would not substantially achieve the desired deterrent effect." *Calsep A/S v. Dabral*, 84 F.4th 304, 311 (5th Cir. 2023) (quotations omitted).[5]

*i. Defendants acted with the intent to deprive Philips of evidence in support of its claims.*

First, Defendants acted with the intent to deprive Philips of evidence to prove its claims. One court within the Northern District of Texas has observed that the Fifth Circuit has applied Rule 37(e)(2)'s "intent to deprive" standard nearly interchangeably with the Fifth Circuit's bad-faith standard in other spoliation contexts. *BHI Energy I Power Servs. LLC*, 2024 WL 1607065, at *12 (collecting cases). A party acts in bad faith when they destroy something "for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

Here, one of Defendants' stated reasons for deleting the log files and disabling Philips' remote monitoring was to prevent Philips "from knowing when and where Defendants were performing services for [their] customers" on MRI machines. Doc. 308, Resp., 8; *see also* Doc. 322, Transcript, 192. Thus, Defendants deleted the files and disabled Philips' remote monitoring software to obscure the *exact conduct* at issue in this lawsuit. The Court finds that this stated reason

---

[5] Several courts have noted that it is unclear whether the Court must make a finding of bad faith to enter enhanced sanctions under Rule 37(e)(2) because the four heightened requirements predate an amendment to Rule 37(e)(2). *United Healthcare Servs., Inc. v. Rossel*, No. 3:21-CV-1547-L-BT, 2024 WL 1252365, at *5 (N.D. Tex. Mar. 21, 2024) (Rutherford, M.J.). Because all four elements are established here, the Court will assume for the purposes of this case that district courts must make these four findings before entering litigation-terminating sanctions. *Cf. United Healthcare Servs., Inc. v. Next Health LLC*, No. 3:17-CV-0243-X-BT, 2023 WL 2589237, at *6 (N.D. Tex. Mar. 21, 2023) (Starr, J.).

alone is sufficient to satisfy Rule 37(e)(2)'s "intent to deprive" Philips of information for litigation standard.

But that is not the only evidence supporting the Court's finding that Defendants intended to deprive Philips of information for litigation. Shannon also admitted to continuing to delete the log files after litigation began. Doc. 322, Transcript, 175. He then instructed West to delete log files and disable Philips' remote monitoring software not only after receiving notice of the lawsuit, but after Philips filed a Motion to Compel production of all log files within Defendants' possession. Doc. 286, Pl.'s Sealed App'x, 15–16; *See* Doc. 54, Mot. Compel; Doc. 322, Transcript, 171–72. So Shannon knew the log files were important to the case because Philips requested the log files be produced in discovery. Defendants then opposed the Motion to Compel, arguing that the log files were irrelevant. Doc. 56, Pl.'s App'x, 36. While Defendants were arguing to the Court that the log files were irrelevant, Shannon was deleting the log files behind the scenes to ensure that Philips did not know where Defendants were servicing Philips MRI machines. Defendants' conduct is egregious and warrants enhanced sanctions. *See Balancecxi, Inc. v. Int'l Consulting*, No. 1:19-CV-0767-RP, 2020 WL 6886258, at *4, *6, *14 (W.D. Tex. Nov. 24, 2020), *report and recommendation adopted sub nom. Balancecxi, Inc. v. Int'l Consulting & Rsch. Grp., LLC*, No. 1:19-CV-767-RP, 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021) (granting default judgment because the defendants deleted ESI after the case was filed and while discovery was ongoing).

Defendants present three pieces of evidence to demonstrate that Shannon and the Defendants did not act with the intent to deprive Philips of evidence in this litigation. All fail.

Shannon testified that he was not attempting to deprive Philips of evidence supporting the company's claims. Doc. 323, Transcript, 173. However, the Court did not find Shannon's testimony

as to Defendants' intent credible because it contained numerous inconsistencies.

Next, Defendants argue that Shannon deleted the log files as part of routine, preventative maintenance. Doc. 308, Resp., 23–24. Shannon testified that he was trained with an old Philips installation manual that instructed users to delete log files. Doc. 323, Transcript, 188, 195. However, Dickson testified that the installation manual Shannon was referencing only discussed deleting different log files than the files Shannon deleted. *Id.* at 24. Thus, the Philips installation manual never told users to delete the files Shannon deleted.

The Court further finds that Shannon did not believe he needed to delete the log files as part of preventative maintenance on the MRI machines. If Shannon believed, even incorrectly, that he needed to delete the log files for routine maintenance, then he would not have intended to deprive Philips of information to use in this lawsuit as necessary for the Court to impose enhanced sanctions. *See Calsep A/S*, 84 F.4th at 310–11. But Defendants did not produce this installation manual until the second day of the evidentiary hearing. Doc. 323, Transcript, 4 (discussing how the Defendants found the installation manual after the first day of the hearing). If Shannon really believed that a Philips installation manual required him to delete log files, then he would have immediately sought out and produced the installation manual when Philips accused him of improperly destroying evidence. He did not do so, and the Court did not find his testimony on this point credible. Thus, the Court rejects this piece of evidence.

Lastly, Defendants produced an error message that was supposedly given to them by one of their customers instructing the user to delete log files because the storage disk was full.[6] Again,

---

[6] The error message was Defendants' Exhibit 17 at the evidentiary hearing. *See* Doc. 322, Transcript, 106. This document had not previously been filed and is not contained within any of the numerous Appendices available on CM/ECF.

Defendants did not produce this error message until the week before the hearing. If Shannon actually deleted log files because his customers frequently received this error message, Shannon would have cited this error message much earlier than the week before the hearing. Additionally, Dickson testified that this error message should never appear on a Philips MRI machine used in the clinical setting, Doc. 322, Transcript, 120, which is the only setting in which Defendants work on MRI machines. Doc. 322, Transcript, 149. Thus, the Court does not find this explanation credible, either. Therefore, the Court finds that Defendants acted with the intent to deprive Philips of evidence in this litigation, and enhanced sanctions under Federal Rule of Civil Procedure 37(e)(2) are warranted here.

*ii. All four elements for imposing litigation-terminating sanctions are satisfied here.*

The Court next finds that all four elements are satisfied under the Fifth Circuit's heightened standard for imposing litigation-terminating sanctions. First, Defendants acted in bad faith when they purposely deleted the log files. As discussed above, the Fifth Circuit has applied Rule 37(e)(2)'s intent to deprive standard interchangeably with the Fifth Circuit's standard for bad faith. *BHI Energy I Power Servs. LLC*, 2024 WL 1607065, at *12 (collecting case). Because the Court has already found that Defendants acted with the intent to deprive Philips of evidence to use in this litigation, the Court likewise finds that Defendants acted in bad faith when they destroyed evidence. *See Guzman*, 804 F.3d at 713.

Second, the Court finds that Defendants, not their counsel, are to be blamed for the spoliation. There is no evidence that Shannon ever deleted files on instruction from counsel, and the Court has no reason to question the ethics of any of Defendants' counsel, who have acted with integrity throughout the course of this litigation. Thus, the second element for awarding litigation-

ending sanctions is satisfied. *See Calsep A/S*, 84 F.4th at 311.

Third, Philips has been significantly prejudiced by Defendants' spoliation. A party has been prejudiced when "[its] case-in-chief is seriously and gravely impacted." *Id.* at 314. Because Defendants deleted the system log files, Philips is unable to prove which trade secrets Defendants used. Dr. Orso testified that he needed the log files Shannon deleted to discover everything the Defendants used on the MRI machines. Doc. 323, Transcript, 57–58. This prejudice affects Philips' ability to prove both the liability and the damages for its misappropriation of trade secrets claims. *See CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009) (listing the elements of a claim for misappropriation of trade secrets). Thus, Defendants' spoliation has prevented Philips from presenting the evidence necessary to prove its trade secrets claims, and Philips was significantly prejudiced. *See id.*

At the hearing, Defendants argued that Philips failed to meet its burden of proving prejudice because Philips has not proven that any log files were missing. Doc. 323, Transcript, 211–12. The Court rejects this argument because Shannon admitted to deleting service log files and .dongle.his files. Doc. 322, Transcript, 175, 196. Dr. Orso then testified that he could not conclude which tools Defendants used on the MRI machines because these files were deleted. Doc. 323, Transcript, 57–58. Thus, Philips was prejudiced by Defendants' spoliation. *See Calsep A/S*, 84 F.4th at 314.

Fourth, the Court finds that no lesser sanction than default judgment on the misappropriation of trade secrets claims would achieve the necessary deterrent effect. Before imposing terminating sanctions, such as a default judgment, district courts must consider whether any lesser sanction would be sufficient. *See id.* at 315. But "a detailed consideration of lesser sanctions isn't required where, as here, a court appropriately concludes that a party's act was particularly

egregious, part of a pattern of repeated violations, and—as evidenced by the wrongdoer's conduct—there's some indication that lesser sanctions would be futile or ignored." *Id.* at 317.

Here, no lesser sanction could sufficiently deter future parties from destroying evidence. Defendants' conduct was egregious: they not only continued to delete log files after litigation began, Doc. 322, Transcript, 175, but Shannon also told his employee to delete the log files from MRI machines after Philips filed a Motion to Compel all log files in Defendants' possession. Doc. 286, Pl.'s Sealed App'x, 15–16.

No lesser sanction would be sufficient in light of these circumstances, and Defendants do not propose one. *See Calsep A/S*, 84 F.4th at 317. Further, any lesser sanction would almost certainly be futile in this case because Shannon testified that he did not believe he did anything wrong when he deleted the log files. Doc. 322, Transcript, 249. Thus, the Court awards Philips default judgment under Rule 37(e)(2) for its misappropriation of trade secrets claims under the DTSA and the TUTSA.

3. The Court Will Not Impose Any Separate Sanctions on Philips' Remaining Four Claims.

The Court does not award Philips default judgment on its CFAA, DMCA, unfair competition, or fraud claims. Instead, when determining the damages the Court will award in connection with Philips' trade secrets claims, the Court will also consider the fact that Philips cannot prove the full extent of its damages model in support of its CFAA, DMCA, unfair competition, and fraud claims.

The Court will address the merits of these additional four claims in a separate Order but will say here that Philips was not as severely prejudiced by Defendants' spoliation for the four remaining claims as it was for its misappropriation of trade secrets claims. For example, Section 1201(a)(1) of

the DMCA provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). Additionally, the DMCA awards statutory damages of no less than $2,500 "per act of circumvention." 17 U.S.C. § 1203(c)(3)(A). Even with the spoliation, Philips has identified 22 times that it believes Defendants circumvented Philips' security measures on an MRI machine. Doc. 243, Pl.'s App'x, 585. Thus, Philips has evidence to support both liability and damages for its DMCA claim.

Philips also alleges that the same conduct—using a fake IST certificate—supports its CFAA and fraud claims. *See* Doc. 240, Pl.'s Br. Mot. Summ. J., 24, 36. Under Texas law, one remedy for fraud is that plaintiffs may recover disgorgement of all profits the defendants recovered from their fraudulent scheme. *See Robertson v. ADJ P'ship*, 204 S.W.3d 484, 494 (Tex. App.–Beaumont 2006, pet. denied). Here, Philips has identified 22 times it believes Defendants engaged in fraud, and Philips received certain invoices from Defendants detailing how much Defendants charged for servicing MRI machines at different locations. *See* Doc. 310, Def.'s App'x, 1890–98. While the invoices were insufficient evidence for the trade secrets claims because they did not specify which software tools were used, the invoices do provide dates on which Defendants worked on MRI machines and how much money Defendants charged for its services. Therefore, Philips has evidence it can present on damages for its fraud claim.

However, Defendants' spoliation likely means that Philips cannot prove every instance that Defendants circumvented the MRI security measures or committed the allegedly fraudulent conduct. Thus, the Court will consider this fact when determining the amount of damages the Court will award Philips in connection with its misappropriation of trade secrets claims. Because Philips has significantly more evidence in support of the other four claims than it does in support of its

trade secrets claims, the Court finds that awarding default judgment or awarding Philips its disgorgement of profits damages model would be inconsistent with the Fifth Circuit's heightened standard for litigation-terminating sanctions. With respect to the remaining four claims, the Court believes a lesser sanction than default judgment would achieve the necessary deterrent effect, and it is less clear that Philips was substantially prejudiced in asserting these claims. *See Calsep A/S*, 84 F.4th at 314. Therefore, awarding Philips its entire disgorgement of profits damages model would be harsher than justice requires. *See Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 618 (S.D. Tex. 2010).

Instead, the Court concludes that a more appropriate remedy is for Philips to present the existing evidence on the CFAA, DMCA, unfair competition, and fraud claims without any reference to Defendants' spoliation that the Court resolves in this Order. And the Court will incorporate the fact that Philips cannot prove all its damages for its remaining four claims. In other words, the Court will award additional damages to Philips for its misappropriation of trade secrets claims as a sanction because Defendants deleted evidence in support of Philips' four other claims. Accordingly, litigation for Philips' remaining four claims will proceed based on the evidence that Philips actually possesses.

And because the Court concludes that Defendants should be sanctioned under the Federal Rules of Civil Procedure, the Court will not address whether the Court could have also sanctioned Defendants using its inherent power to sanction. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.").

B.      *The Court Will Award Philips $6.05 Million in Damages on the Trade Secret Misappropriation Claims.*

While some courts have only granted default judgment as to liability when sanctioning parties under Federal Rule of Civil Procedure 37(e)(2), *see Balancecxi, Inc.*, 2020 WL 6886258, at *16, Philips is primarily prejudiced by its inability to prove the full extent of its damages. Because granting default judgment as to liability would not sufficiently address Philips' prejudice, the Court will also award Philips actual damages as an evidentiary sanction. *Cf. Calsep A/S v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2022 WL 2813069, at *1, *3 (S.D. Tex. June 10, 2022), *report and recommendation adopted*, No. 4:19-CV-01118, 2022 WL 2806538 (S.D. Tex. July 18, 2022), *aff'd sub nom. Calsep A/S v. Dabral*, 84 F.4th 304 (5th Cir. 2023) (awarding the plaintiffs damages after previously granting them default judgment as a sanction).

The last issue to decide is what damages Philips should recover as an evidentiary sanction. After determining that sanctions are appropriate, federal courts have broad discretion in crafting a remedy for the sanctionable conduct. But when choosing the remedy, "the severity of a sanction for failing to preserve when a duty to do so has arisen must be proportionate to the culpability involved and the prejudice that results. Such a sanction should be no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Rimkus Consulting Grp.*, 688 F. Supp. 2d at 618. In other words, an appropriate sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776,

779 (2d Cir. 1999) (citation omitted).[7]

The Court acknowledges that crafting the appropriate remedy—i.e., determining the appropriate amount of damages—is a very difficult task here. One method of damages for misappropriation of trade secrets claims is the reasonable royalties damages model. *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 348 (E.D. Tex. 2019). The reasonable royalties model requires calculating "what the parties would have agreed to as a fair price for licensing" the trade secrets used by the defendant. *Id.* (quotation omitted). Here, Schoettelkotte testified that the reasonable royalty for all 511 of Philips' claimed trade secrets would be $12.1 million. *See* Doc. 323, Transcript, 137. In its Motion for Spoliation Sanctions, Philips requests that the Court award Philips its entire damages model in connection with its misappropriation of trade secrets claims as a sanction. Doc. 288, Mot., 21–22.

The Court has found that Defendants spoliated evidence and should therefore be sanctioned—that does not mean, however, that the Court should simply give Philips everything it requests without inquiring further. Here, the Court finds that awarding Philips its damages model—based on the reasonable royalties for all 511 of its supposed trade secrets—is more severe than necessary. It would give Philips a windfall and would therefore be an inappropriate sanction.

While Defendants deleted the evidence that would have allowed the Court to determine the extent of their misappropriation of trade secrets, the Court finds it unlikely that Defendants would have used all 511 trade secrets that were available to someone with CSIP Level 2 access. Philips MRI machines have 511 tools that Philips argues are protected trade secrets, and Philips classifies these

---

[7] While these two cases discuss courts crafting a remedy when using the inherent power to sanction, the Court finds their reasoning instructive when determining what damages Philips should recover as a sanction under Rule 37.

tools as CSIP Level 1 or higher. Doc. 243, Pl.'s Sealed App'x, 76. When Defendants used the fake Donald Trump IST certificate, they received access to all 511 of these supposed trade secrets. *See id.* But Philips' reasonable royalties damages model assumes that Defendants *used all 511 trade secrets* that are available on Philips MRI machines. Doc. 323, Transcript, 137. While Defendants deleted most of the service log files, Philips has presented one such logbook to the Court. In this logbook, Defendants used ten tests while performing repair and maintenance services on a Philips MRI machine. Doc. 243, Pl.'s Sealed App'x, 39–41. Of these ten tests, only one is a CSIP Level 1 tool. *Id.* at 40. Thus, Philips agrees that all but one of these ten tools are not trade secrets. Doc. 265, Pl.'s Resp. Mot. Summ. J., 29 ("The trade secrets at issue in this lawsuit are CSIP Level 1 and higher service tools that were also classified as CSIP Level 1 or higher before November 2018."). Therefore, the limited evidence of the log files before the Court suggests that the Defendants primarily used tools that Philips admits are not trade secrets. The goal of sanctioning a party for destroying evidence is to place "the prejudiced party [in] the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Rimkus Consulting Grp.*, 688 F. Supp. 2d at 618 (citing *West*, 167 F.3d at 779). The Court finds awarding Philips damages under the assumption that Defendants used the remaining 510 trade secrets to be an overly punitive sanction.

Further, Philips' proposed sanctions is also disproportionate when considering Defendants' revenue. Defendants' invoices, which the Court has no reason to dispute the credibility of, show that the Defendants' primary source of revenue was not servicing MRI machines. Image II's and Axiom's invoices showed that the two Defendant companies made a combined $16.1 million in revenue in the last five years. Doc. 281, Def.'s Sealed App'x, 510. However, only about $2.3 million

of that revenue came from servicing MRI machines. *See id.* at 509–10.[8] Because less than 20% of Defendants' collective revenue came from servicing MRI machines, the Court is not persuaded that Philips would have shown Defendants used every trade secret on the MRI machines but-for Defendants' spoliation.

However, Defendants engaged in egregious conduct that has made it impossible for the Court to determine the extent of Defendants' liability. Thus, as an evidentiary sanction, the Court will award Philips half of its reasonable royalties damages model: $6.05 million. The existing log file shows Defendants used at least one tool that Philips claims is a trade secret. The Court also notes that Shannon stated in his affidavit that Defendants only used Service Tools, and that they did not use any of the tools Philips claims to be trade secrets. *See* Doc. 246-1, Defs.' App'x, 2–3. Again, the Court does not find Shannon's testimony credible as Defendants' own expert witness acknowledged Defendants used at least one tool that was classified as CSIP Level 1 before SP5 was implemented. Doc. 243, Pl.'s Sealed App'x, 39–41. Thus, Defendants misappropriated at least one trade secret.

It is impossible for Philips to prove how many trade secrets Defendants used because of Defendants' egregious spoliation. By deleting the log files, Shannon has prevented Philips from discovering the evidence that would demonstrate exactly what the Defendants did on the MRI machines. Not only does Philips not know how many trade secrets Defendants used, but Philips also does not know how many log files Defendants destroyed. This pattern of spoliation makes the extent of Defendants' liability incredibly unclear because Defendants may have only used one trade secret, but they may have used many more trade secrets. These facts warrant a substantial damages award.

Even more incredibly, after destroying all this evidence, Defendants argued that they are

---

[8] The Court got $2.3 million from adding Axiom's and Image II's respective "Total Service Sales." *See* Doc. 281, Defs.' Sealed App'x, 509–10.

entitled to summary judgment on Philips' misappropriation of trade secrets claims because Philips cannot prove what trade secrets the Defendants used. Doc. 298, Defs'. Reply Mot. Summ. J., 10 ("In fact, [Philips] has no evidence that Defendants actually *used* the alleged trade secrets." (emphasis in original). The Court will not allow Defendants to benefit from their spoliation.

Further, as discussed above, Defendants' spoliation also affected Philips' ability to prove its damages for the company's remaining four claims. Without the log files, Philips cannot prove every single instance in which Defendants circumvented Philips security measures, which means Philips cannot prove the entirety of its damages model in support of the CFAA, DMCA, and fraud claims. A sanction of $6.05 million is further necessary to remedy the additional prejudice that Philips incurred from being unable to prove the damages for these claims. Such a sanction will place Philips in the position it would have occupied had Defendants not destroyed evidence that would have allowed Philips to prove the damages the company suffered for all six of its claims.

The Court additionally finds that an award of $6.05 million in damages is necessary to deter other parties from destroying evidence and later arguing that the opposing party does not have any evidence in support of its claims. *See West*, 167 F.3d at 779. Any lesser sanction would not only fail to provide a deterrent effect—it would effectively incentivize future parties to destroy evidence. For example, if a future ISO used roughly 30% of the trade secrets they had access to, a lesser sanction would encourage the ISO to delete everything because their sanction would be smaller than the reasonable royalties that the plaintiff would be entitled to recover.

The Court also finds that this damages award places the risk of an erroneous judgment on Defendants. The limited evidence before the Court suggests that Defendants may not have used many of Philips' trade secrets, which would mean that Philips should not recover such a large

damages award. However, the Court does not know how many trade secrets Defendants used because of their spoliation. The Court will not place the risk of an erroneous judgment on Philips because it is also possible that Defendants used many of the CSIP Level 1 or higher tools. Defendants should bear the risk of a potentially erroneous judgment, *see West*, 167 F.3d at 779, and the Court will award Philips half of its damages model to protect the non-spoliating party. Because the Court does not know what happened because of Defendants' conduct, the Court will not risk allowing Defendants to receive a windfall from destroying the log files.

In sum, the Court finds that Philips is entitled to default judgment on its misappropriation of trade secrets claims and awards Philips $6.05 million in damages as a sanction. This damages amount balances the need to deter future parties from destroying evidence and placing Philips in the position it would have occupied but-for the spoliation, while also accounting for the additional prejudice Philips has suffered from being unable to prove the full extent of its damages in connection with the company's four other claims. Lastly, the Court finds that a sanction of $6.05 million will not be overly punitive based on the facts presented in this case. The remaining claims in this lawsuit will proceed based on the evidence that Philips is able to present to the Court.

### IV.

### CONCLUSION

For the reasons discussed above, the Court **GRANTS** Philips' Motion for Spoliation Sanctions (Doc. 285). The Court grants Philips default judgment on its misappropriation of trade secrets claims under the DTSA and the TUTSA and awards Philips $6.05 million as an evidentiary sanction. Philips' remaining CFAA, DMCA, unfair competition, and fraud claims will proceed based on the evidence Philips can present.

SO ORDERED.

SIGNED: November 4, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE