UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PHILIPS NORTH AMERICA LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0147-B |
| | § | |
| IMAGE TECHNOLOGY | § | |
| CONSULTING, LLC; MARSHALL R. | § | |
| SHANNON, IMAGE TECHNOLOGY | § | |
| CONSULTING II, LLC; and AXIOM | § | |
| IMAGING INC., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION & ORDER</u>

Before the Court is Plaintiff Philips North America LLC ("Philips")' Motion for Partial Summary Judgment (Doc. 239), Defendants Image Technology Consulting, LLC, Marshall R. Shannon, Image Technology Consulting II, LLC, and Axiom Imaging Inc. (collectively, "Defendants")'s Motion for Summary Judgment (Doc. 244), Philips' Motion to Exclude Certain Opinions of Michael Fenn (Doc. 227), Philips' Motion to Strike an Amicus Brief (Doc. 221), Philips' Motion to Strike a Response Filed by a Non-Party (Doc. 255), Defendants' Motion to Strike the Expert Report of Dr. Alberto Gutierrez (Doc. 234), Defendants' Motion to Strike the Expert Report of Dr. Alessandro Orso (Doc. 275), Defendants' Motion to Strike the Expert Report of Schoettelkotte (Doc. 279), and Tommy Geske's Motion to Compel (Doc. 297).[1] For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motions.

---

[1] The parties have also filed a litany of Motions to Seal, which the Court will address in a separate Order.

# I.

# BACKGROUND

This case is about MRI machines. Philips manufactures MRI machines and sells them to healthcare providers like hospitals. Doc. 242, Pl.'s App'x, 1. Philips also offers maintenance and repair services for Philips MRI machines. *Id.* However, Philips is not the only entity that provides such services for its MRI machines. There are several companies called Independent Service Operators ("ISOs") that also provide these services. Doc. 246, Defs.' App'x, 3. Defendants Image Technology Consulting II ("Image II") and Axiom Imaging, Inc. ("Axiom") are ISOs that contract with the owners of the MRI machines to provide maintenance and repair services on Philips MRIs. *Id.* Defendant Marshall Shannon owns these two companies. *Id.* at 1. Shannon also previously owned Defendant Image Technology Consulting ("Image Tech"), which is no longer operating. *Id.* at 1–2.

A.    *Philips Security Measures*

Philips MRI machines contain complicated software that helps the machines operate efficiently. Philips considers some of the software tools on these machines to be proprietary trade secrets and has implemented strict security measures to protect them. Doc. 242, Pl.'s App'x, 1–2. Philips classifies its tools based on how sensitive Philips considers the software. Doc. 243, Pl.'s Sealed App'x, 192–93. The more sensitive the information, the higher its Customer Service Intellectual Property ("CSIP") classification. *See id.* at 193. For example, CSIP Level 0 information and tools are generally available to any party who asked Philips for permission to access them. *Id.* However, only Philips employees or companies that entered into licensing agreements with Philips have access to CSIP Level 1 tools. *Id.* And Philips reserves CSIP Level 2 classification for its most commercially sensitive information—generally only Philips' Field Service Engineers can access this information. *Id.*

Under the company's security measures, Philips assigns every authorized user a CSIP classification. *Id.* at 17. Philips then issues the user an Integrated Security Tool ("IST") certificate granting them access to all information and tools that fall under their assigned CSIP classification. *Id.* When the user inputs their IST certificate onto a Philips MRI, the system allows them to access only the information their certificate says they are authorized to access. *See id.* Thus, if someone's IST certificate designated them with a CSIP Level 1 classification, they would only be authorized to access materials on the MRI machine that are designated CSIP Level 1 or lower.

Philips originally classified many of the tools the ISOs used to provide their services ("Service Tools") as CSIP Level 0. Doc. 243, Pl.'s Sealed App'x, 20. The tools Defendants used to provide the repair and maintenance services ("Service Tools") were on the MRI machines' installation menu, which Defendants could access freely because they had CSIP Level 0 classification. *See id.* at 21. Thus, for many years, ISOs were able to provide their maintenance and repair services without needing permission from Philips. *Id.* at 20. However, Philips implemented a new software update in 2019, called Software Pack 5 ("SP5"), which changed the Service Tools' classification to CSIP Level 1. *Id.* at 20–21. After the SP5 update, the Service Tools were no longer accessible on the MRIs' installation menu. *Id.* Thus, Defendants could not use the Service Tools without getting permission from Philips, even if the owners of the MRI machines wanted to hire the Defendants to provide maintenance and repair services on their MRI machines.

B.     *Defendants' Circumvention of Philips Security Measures*

Defendants knew that they would not be able to access the Service Tools on any Philips MRI machine that had installed the SP5 software. *See* Doc. 242, Pl.'s App'x, 354–55. Because they wanted to continue providing maintenance services to their customers, Defendants obtained a fake IST

certificate to bypass Philips' security measures. *Id.* at 354. This fake IST certificate tricked Philips' security measures into thinking the user was a Philips Field Service Engineer named Donald Trump and provided Defendants access to all information classified as CSIP Level 2 or lower. Doc. 243, Pl.'s Sealed App'x, 39–41. Importantly, Philips did not issue the Donald Trump IST certificate and Philips never authorized Defendants to access any information classified higher than CSIP Level 0. Doc. 242, Pl.'s App'x, 364.

Philips learned that Shannon and Image Tech had a fake IST certificate on June 4, 2021. Doc. 242, Pl.'s App'x, 430, 433. Philips filed this lawsuit against Shannon and Image Tech in January 2022. Doc. 1, Compl. In July 2023, Philips learned that Axiom and Image II had also engaged in conduct that Philips alleges is unlawful. Doc. 267, Pl.'s App'x, 5. Philips amended its Complaint to assert claims against Axiom and Image II on September 14, 2023. Doc. 119, Second Am. Compl. Philips then served Axiom and Image II on September 22, 2023. Doc. 125, Summons; Doc. 126, Summons.

Philips has four remaining claims[2] that it asserts against each Defendant: (1) a Computer Fraud and Abuse Act ("CFAA") claim; (2) a Digital Millenium Copyright Act ("DMCA") claim; (3) an unfair competition claim under Texas law; and (4) a common law fraud claim, also under Texas law. Doc. 119, Second Am. Compl., ¶¶ 66–142. Philips has moved for summary judgment as to liability on all of its claims except for unfair competition. Doc. 240, Pl.'s Br. Mot. Summ. J., 4. Philips has also moved to exclude some opinions offered by Defendants' expert witness. Doc. 227, Mot. Exclude. Defendants have moved for summary judgment on all of Philips' claims. Doc. 245, Defs.' Br. Mot. Summ. J., 1. Defendants have also moved to strike Philips' expert testimony. Doc.

---

[2] The Court previously granted Philips default judgment on its misappropriation of trade secrets claims as an evidentiary sanction.

234, Mot. Strike; Doc. 275, Mot. Strike; Doc. 279, Mot. Strike. The Court considers the Motions below.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). On a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material

facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations omitted). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting FED. R. CIV. P. 56(e)).

## III.

## ANALYSIS

The Court starts by granting in part and denying in part each side's respective Motions to Strike. The Court then addresses the parties' Motions for Summary Judgment and concludes that Philips is entitled to summary judgment as to liability on its CFAA, DMCA, and fraud claims, while the statute of limitations bars Philips' unfair competition claim against Axiom and Image II for any conduct that occurred before September 22, 2021. The only issues that will be resolved at trial are: (1) Philips' unfair competition claim against Shannon and Image Tech; (2) whether there are any instances of Philips' unfair competition claim against Axiom and Image II that accrued after September 2021; (3) whether the federal accrual rule delays the accrual date of Philips' CFAA claim against Axiom and Image II until July 2023; and (4) Philips' damages for its four remaining claims.

A.   *The Court Grants in Part and Denies in Part the Motions to Strike.*

The parties have filed six Motions to Strike. Philips moves to exclude the opinions of Defendants' expert Michael Fenn. Doc. 227, Mot. Exclude. Philips has also moved to strike an amicus brief, Doc. 221, Mot. Strike, and a response filed by Thomas Quinn, who is not a party to

this lawsuit. Doc. 255, Mot. Strike. Defendants have likewise filed a Motion to Strike the Expert Report and Testimony of Philips' experts Dr. Alberto Gutierrez, Dr. Alessandro Orso, and W. Todd Schoettelkotte. Doc. 234, Mot. Strike; Doc. 275, Mot. Strike; Doc. 279, Mot. Strike. The Court addresses each Motion to Strike in turn.

> 1. The Court Grants in Part and Denies in Part Philips' Motion to Exclude Fenn's Testimony.

"'In considering a Rule 56(c) motion opposed by expert testimony, the trial court has broad discretion to rule on the admissibility of the expert's evidence and may inquire into the reliability and foundation of any expert's opinion.'" *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (alterations omitted) (quoting *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123 (5th Cir. 1988)). The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which permits an otherwise qualified expert to testify if the proponent demonstrates the following:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. As the Supreme Court explained in *Daubert v. Merrell Dow Pharms., Inc.*, Rule 702 requires that courts act as gatekeepers to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." 509 U.S. 579, 589 (1993).

"The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Equal Emp. Opportunity Comm'n v. S&B Indus., Inc.*, No. 3:15-CV-0641-D, 2017 WL 345641, at *2 (N.D. Tex. Jan. 24, 2017) (Fitzwater, J.). "The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence."

*Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021) (Fitzwater, J.). "Experts cannot render conclusions of law or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (citation omitted).

Philips moves to exclude five of Fenn's opinions. First, Fenn provided testimony discussing how the DMCA defines "effective" and "modifications," and opined as to whether those definitions are satisfied in this case. Doc. 228, Br. Mot. Exclude, 1. Second, Fenn testified that he believes certain FDA regulations justified Defendants' actions in this lawsuit. *Id.* at 1–2. Third, Fenn testified that Defendants were authorized to work on the MRI machines by their customers. *Id.* at 2. Fourth, Fenn opined that he believes Defendants' methods of circumvention were "necessary" as required to be exempted from the DMCA. *Id.* Fifth, Fenn testified that he believes a skilled engineer could create a fake IST certificate to circumvent Philips' security measures. *Id.* at 2–3. The Court addresses each opinion in turn.

*i. Fenn may not provide testimony on the meaning of terms defined by the DMCA.*

Fenn's testimony on whether Philips' security measures were effective and whether Defendants modifying registry files would constitute "modifications" is inadmissible because these are attempts to provide legal opinions. Section 1201(a)(1) of the DMCA provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). The DMCA further provides that "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* § 1201(a)(3)(B).

Fenn opined that Defendants did not violate the DMCA because Philips' security measures

were not effective. Doc. 230, Pl.'s Sealed App'x, 59.  Specifically, Fenn testified that Philips' security measures "[do] not use industry standard protection techniques like digital signatures for its IST certificates." *Id.* By testifying to whether Philips' security measures fell within the meaning of "effective" as written in the statute, Fenn attempted to provide a legal opinion. And in any event, the DMCA simply requires the technological measure to "require[] the application of information, or a process or a treatment" for the technological measure to effectively control access to a work. 17 U.S.C. § 1201(a)(3)(B). It does not require the technological measures to conform with industry standards. Thus, Fenn may not opine on whether he believes the security measures were effective, as his testimony offers a legal opinion and is inconsistent with the text of the DMCA.

Next, Fenn opined as to whether Defendants modifying registry files would constitute "modifications" that would mean the right to repair DMCA exemption does not apply. Doc. 228, Br. Mot. Exclude, 9. Fenn testified that Defendants did not make any modifications to the MRI machines because "Defendants did not make any permanent modifications to the software." Doc. 230, Pl.'s Sealed App'x, 58. This is a legal opinion because Fenn is testifying as to the meaning of "modification" under the DMCA's right to repair exemption. *See Renfroe*, 974 F.3d at 598. Accordingly, the Court grants the Motion to Strike as to Fenn's testimony on the meaning of "effective" and "modifications."

> *ii. Fenn may not provide testimony discussing FDA regulations.*

Philips next moves to exclude portions of Fenn's report discussing whether the Defendants' conduct was authorized by various FDA regulations. Doc. 228, Br. Mot. Exclude, 11. Because this testimony is attempting to establish that Defendants complied with FDA regulations, the Court finds that these statements are likewise inadmissible legal opinions. *See Renfroe*, 974 F.3d at 598.

*iii. Fenn may not testify as to whether customers authorized Defendants to access MRI machines.*

Philips next moves to exclude one sentence in Fenn's report in which Fenn states that customers authorized Defendants to access their MRI machines. Doc. 228, Br. Mot. Exclude, 11. Defendants respond that Fenn does not intend to testify as to what any customers told Defendants. Doc. 259, Resp., 7. To assuage Philips' concerns, Fenn may not testify as to whether customers told Shannon he could work on their MRI machines because such testimony is not an expert opinion, FED. R. EVID. 702, and it would constitute inadmissible hearsay. FED. R. EVID. 801(c).

*iv. Fenn may testify as to whether Defendants' circumventions were a necessary step to repairing an MRI machine.*

Philips next moves to exclude Fenn's testimony that Defendants circumventing Philips' technical measures was necessary to repair or maintain the MRI machines. Doc. 228, Br. Mot. Exclude, 13. Philips argues that Fenn does not know whether the methods Defendants used were necessary to repair the machine, and that Fenn did not use a reliable methodology when reaching his opinions. *Id.* The Court rejects both arguments.

Philips argues that Fenn only considered whether the methods of circumvention were necessary to access certain service tools as opposed to whether the circumventions were necessary to repair the MRI machine. *Id.* at 14. This argument fails because Fenn said that "using a fake IST certificate (or modifying the Windows Registry) was a necessary step for Defendants to execute service tools for at least Planned Maintenance, Repair, and Troubleshooting." Doc. 230, Pl.'s App'x, 57. Thus, Fenn knew whether the methods Defendants used were necessary to service the machine, and Fenn used a reliable methodology because he expressly considered whether Defendants needed any tools classified at CSIP Level 1 to maintain or repair the MRI machine.

Philips next contends that Fenn's testimony about whether Defendants' circumventions were necessary "would be highly prejudicial and risk jury confusion." Doc. 228, Br. Mot. Exclude, 14. This argument lacks merit. A court may exclude evidence "if its probative value is substantially outweighed by a danger of . . . *unfair* prejudice." FED. R. EVID. 403 (emphasis added). "Unfair prejudice as used in rule 403 is not to be equated with testimony that is merely adverse to the opposing party." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006) (quotations omitted). While testimony suggesting that the DMCA exemption applies to some of Defendants' circumventions may prejudice Philips' case, Philips has entirely failed to explain how it is *unfairly* prejudicial or how it would confuse the jury. So the Court rejects this argument.

*v. The Court need not address Fenn's testimony on reverse engineering.*

Philips lastly moves to exclude Fenn's testimony that Philips did not use reasonable measures to protect its trade secrets. Doc. 228, Br. Mot. Exclude, 16. Because the Court previously granted Philips default judgment on its trade secret claims, any testimony regarding the trade secrets claims is no longer at issue in this lawsuit. Accordingly, the Court denies as moot the Motion to Exclude as to Fenn's testimony on reverse engineering.

2. The Court Grants Defendants' Motion to Strike Dr. Gutierrez's Testimony.

The Court next grants Defendants' Motion to Strike Dr. Gutierrez's Testimony because this testimony offers impermissible legal opinions. One of Philips' expert witnesses, Dr. Gutierrez, plans to offer testimony interpreting FDA regulations. Doc. 236, Def.'s App'x, 4.

As Philips persuasively argued in its Motion to Exclude Fenn's Opinions, any testimony discussing the meaning of an FDA regulation is an impermissible legal opinion. *Van Winkle v. Rogers*, No. 6:19-CV-01264, 2022 WL 4231013, at *4 (W.D. La. Sept. 13, 2022), *aff'd*, 82 F.4th 370 (5th

Cir. 2023). Thus, Philips may not offer its own expert witness to provide the exact same testimony that Philips successfully sought to exclude.

Philips contends that Defendants did not offer any specific opinion in Dr. Gutierrez's report that constitutes a legal opinion. Gutierrez plans on testifying that "the installation instructions described in 21 CFR 820.170 are limited to the initial installation of the device when sold by the manufacturer and, therefore, would not impose any disclosure obligation on the manufacturer when a used device is subsequently installed or serviced by a third party." Doc. 236, Pl.'s App'x, 14. As this testimony attempts to interpret the scope of a regulation, it is a legal opinion.

In sum, no witness may provide any testimony interpreting a regulation. The meaning of regulations are legal questions decided by the Court, not an expert witness.

   3.   The Court Denies Defendants' Motion to Strike Dr. Orso's Testimony.

Defendants next move to strike two portions of Dr. Orso's testimony. First, Defendants move to strike as unreliable Dr. Orso's report because he assumed that Defendants used all 511 CSIP Level 1 tools or higher that were available on Philips MRI machines. Doc. 276, Br. Mot. Strike, 7–8. The Court denies as moot the Motion to Strike this testimony because it only discusses damages and liability for Philips' misappropriation of trade secrets claims. The Court already granted Philips default judgment on its misappropriation of trade secret claims and awarded Philips damages as an evidentiary sanction.

Next, Defendants move to strike Dr. Orso's opinion that Defendants circumvented Philips' security measures 22 times. Doc. 276, Br. Mot. Strike, 7–8. Defendants argue this opinion is unreliable because ten of the 22 times are based on circumventions of an MRI machine that is no longer located at the facility Defendants serviced. Doc. 314, Reply, 5. The Court finds that this

argument fails to establish that Dr. Orso's testimony is unreliable. It speaks to the *weight* of his opinion, not its *admissibility. See Villegas v. Cequent Performance Prod., Inc.*, No. SA-15-CV-473-XR, 2017 WL 816872, at \*10 (W.D. Tex. Mar. 1, 2017) ("[A]n expert's ignorance of certain facts . . . is a matter of probative weight, rather than admissibility, of evidence."). As the Court explained in a previous Order (Doc. 328), Dr. Orso conducted extensive forensic analysis to identify the times he believes Defendants circumvented Philips' security measures. If Defendants dispute his findings, they may do so at trial. *See Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### 4.   The Court Denies Defendants' Motion to Strike Schoettelkotte's Testimony.

Defendants lastly move to strike Schoettelkotte's expert testimony on damages. First, Defendants move to strike his report as to reasonable royalty damages. The Court denies the Motion as to this point as moot because the Court already sanctioned Defendants for spoliation and awarded Philips reasonable royalties.

Defendants then move to strike Schoettelkotte's report because it "does not appropriately attribute [Philips'] alleged damages to the respective actions of each of the specific Defendants." Doc. 280, Br. Mot. Strike, 12. Defendants argue they are each separate entities, thus the damages should be separated between them. *See id.* Defendants cite no authority to support their proposition that this is grounds to strike an expert opinion on damages. Thus, the Court denies the Motion.

Lastly, Defendants argue that Schoettelkotte made misleading statements about remediation costs in his expert report. Doc. 280, Br. Mot. Strike, 13. Defendants argue it was improper because Schoettelkotte included remediation costs in his report, yet he testified that remediation costs were

not part of his damages model. *Id.* However, Defendants entirely fail to explain why this is grounds to strike his discussion on remediation costs, so the Court denies the Defendants' Motion to Strike this part of his testimony.

     5.  The Court Denies Philips' Motion to Strike the Amicus Brief and Quinn's Response.

Philips next moves to strike Tommy Geske's Amicus Brief and Quinn's Response. Doc. 221, Mot. Strike; Doc. 255, Mot. Strike. After Philips filed these two Motions to Strike, Geske filed a Motion to Compel (Doc. 297), seeking a Court order to compel Philips to follow the Northern District of Texas's Local rules "rather than cavalierly ignore them." The Court denies as moot Philips' Motion to Strike Amicus Brief (Doc. 221) and Philips' Motion to Strike Quinn's Response (Doc. 255) because the Court did not need to consider either the Amicus Brief or Quinn's Response when ruling on the merits of this Order. Lastly, the Court denies Geske's Motion to Compel (Doc. 297) as he is not a party to this lawsuit, so he may not seek a Court Order in this case.

B.   *The Court Grants in Part and Denies in Part Philips' Motion for Summary Judgment on its CFAA, DMCA, and Fraud Claims, and the Court Grants in Part and Denies in Part Defendants' Motion for Summary Judgment.*

The Court grants Philips summary judgment as to liability on its CFAA, DMCA, and fraud claims. The Court denies Defendants' Motion for Summary Judgment as to Philips' unfair competition claim against Shannon and Image Tech. However, the Court finds that Philips' unfair competition claim against Axiom and Image II is barred by the statute of limitations for any conduct occurring before September 22, 2021. The Court also finds there is a genuine issue of material fact whether Philips' CFAA claim against Axiom and Image II is barred by the statute of limitations.

     1.  Philips is Entitled to Summary Judgment on its CFAA Claim as to Liability.

Philips has established that it is entitled to judgment as a matter of law on its CFAA claim

as to liability. Under § 1030(a)(2)(C), it is a violation of the CFAA to "intentionally access[] a computer without authorization or exceed[] authorized access, and thereby obtain[] . . . information from any protected computer." Thus, Philips is entitled to summary judgment by proving that: (1) Defendants intentionally exceeded their authorized access and (2) obtained information (3) on a protected computer. Philips has established all three elements of its CFAA claim as a matter of law.

> i. *Defendants intentionally exceeded their authorized access by using the fake IST certificate to access their customers' MRI machines.*

The CFAA defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Thus, to prevail on its CFAA claim, Philips must establish that Defendants either "obtain[ed] access without authorization" or "obtain[ed] access with authorization but then us[ed] that access improperly." *Musacchio v. United States*, 577 U.S. 237, 240 (2016).

Defendants intentionally exceeded their authorized access by using a fake IST certificate to access CSIP Level 1 and higher information. It is undisputed that Philips only authorized Defendants to access CSIP Level 0 information. *See* Doc. 242, Pl.'s App'x, 364 (Shannon testifying that he had never been granted access to CSIP Level 1 materials or higher). And it is undisputed that, after SP5, the Service Tools were classified as CSIP Level 1 information. Doc. 243, Pl.'s Sealed App'x, 20–21. Thus, Defendants used the Donald Trump IST certificate to access Service Tools which they did not have permission to access. Therefore, Philips has proven the first element of its CFAA claim as a matter of law.

Defendants argue that they did not violate the CFAA because their customers, the owners of the MRI machines, gave them authority to perform maintenance services. Doc. 245, Defs.' Br.

Mot. Summ. J., 11. However, the owners of the MRI machines are not allowed to give Defendants access to CSIP Level 1 software. *See* Doc. 242, Pl.'s App'x, 84 (explaining that a purchaser of a Philips MRI machine is not authorized to provide third parties with access to Philips' proprietary software tools). Because the MRI owners could not provide Defendants with access to the Service Tools, Defendants still exceeded their authorized access when they used the fake IST certificate to gain access to CSIP Level 1 and higher software. *See* 18 U.S.C. § 1030(e)(6).

Defendants next argue that a regulation promulgated by the Federal Drug Administration ("FDA"), 21 C.F.R. § 820.170, serves as a defense. Doc. 245, Defs.' Br. Mot. Summ. J., 11–12. The Court has previously rejected this argument and held that "§ 820.170 does not grant Defendants access to unauthorized information." Doc. 27, Mem. Op. & Order, 12. The Court will not revisit its prior Order and again concludes that § 820.170 does not serve as a defense to Philips' claim under the CFAA.

Defendants also argue that the Library of Congress's right to repair DMCA exemption excuses this conduct, "and the CFAA cannot be interpreted to conflict with the" right to repair exemption. Doc. 271, Defs.' Resp., 14. The Court notes that it is not at all clear that the right to repair exemption conflicts with the CFAA because the regulation only exempts conduct from liability under the DMCA. *See* 37 C.F.R. § 201.40(a). So while Defendants' conduct might be exempted from violating the DMCA, that does not necessarily mean Defendants cannot incur liability from violating other statutes. Regardless, even assuming that the DMCA exemption conflicts with the CFAA, "a valid statute always prevails over a conflicting regulation." *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022) (citation omitted). Further, Defendants cite no authority that the DMCA exemption bars liability under the CFAA. Therefore, the Court rejects this argument.

*ii. Defendants obtained information on the Philips MRI machines.*

A party "obtains information" under § 1030(a)(2)(C) by simply observing or reading information. *Good 'Nuff Garage, LLC v. McCulley*, No. 3:21CV571, 2022 WL 4485810, at *12 (E.D. Va. Sept. 26, 2022) (citing S.Rep. No. 104-357, at *7, 1996 WL 492169 (1996)). Thus, Philips can establish this element of its CFAA claim by demonstrating that Defendants observed information on the MRI machines located in parts of the computer that Defendants were not authorized to access.

By using the Donald Trump IST certificate, Defendants accessed Service Tools which they did not have authority to access. Defendants subsequently used the Service Tools after SP5 reclassified them to CSIP Level 1. Doc. 243, Pl.'s Sealed App'x, 39–41. Thus, Philips has proven that Defendants obtained information as Defendants observed information when they used the Service Tools. *See Good 'Nuff Garage*, 2022 WL 4485810, at *12.

*iii. The Philips MRI machines are protected computers.*

Lastly, a protected computer is any computer that "is used in or affecting interstate commerce." 18 U.S.C. § 1030(e)(2)(B). Proving that a computer has internet access is generally sufficient to establish that it is used in interstate commerce. *See Complete Logistical Servs., LLC v. Rulh*, 394 F. Supp. 3d 625, 645–46 (E.D. La. 2019). Here, the Philips MRI machines had internet access, Doc. 243, Pl.'s Sealed App'x, 275, so the MRI machines are protected computers.

*iv. Philips has incurred costs greater than $5,000.*

In addition to the substantive elements imposed by the CFAA, a plaintiff may only maintain a CFAA cause of action if the plaintiff has incurred losses of more than $5,000 in a one-year period. 18 U.S.C. § 1030(c)(4)(A)(i)(I), (g). The CFAA defines "loss" as "including the cost of responding to

an offense, conducting a damage assessment." *Id.* § 1030(e)(11). Here, Philips has presented evidence that it "incurr[ed] an internal investigation cost of $6,809" while investigating the extent of Defendants' CFAA violations. Doc. 240, Br. Mot., 27 (citing Doc. 242, Pl.'s App'x, 728). Thus, Philips has established it incurred more than $5,000 in losses in one year. 18 U.S.C. § 1030(e)(11).

In sum, Philips has proven each element of its CFAA claim as a matter of law and is therefore entitled to summary judgment as to liability. Philips' damages with regard to its CFAA claim will be resolved at trial.

2.   Philips is Entitled to Summary Judgment on its DMCA Claim as to Liability.

Philips is entitled to judgment as a matter of law on its DMCA claim as to liability for all circumventions that occurred before October 28, 2021. Section 1201(a)(1) of the DMCA provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). "[T]o 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). "[A] technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* § 1201(a)(3)(B).

*i. Philips' security measures protected copyrighted works.*

The Court finds that Philips' technical measures limited access to works subject to copyright protection. As a preliminary matter, the DMCA only applies if the plaintiff used technical measures to control access to works that are subject to copyright protection. 17 U.S.C. § 1201(a)(1)(A). As a

literary work, computer code can be subject to copyright protection. *Vault Corp. v. Quaid Software, Ltd.*, 847 F.2d 255, 259 (5th Cir. 1988). Philips has introduced evidence sufficient to prove as a matter of law that its security measures protected the Service Tools, Doc. 243, Pl.'s Sealed App'x, 580–82, which consist of software code that Philips argues is subject to copyright protection. Doc. 241, Pl.'s Br. Mot. Summ. J., 14. Because Defendants do not contest whether this software is a protected work under the Copyright Act, the Court concludes that Philips satisfied this part of its DMCA claim.

### ii. Defendants circumvented a technological measure.

Defendants circumvented Philips' technological measures by using a fake IST certificate to get access to the Philips MRI machines. A party "circumvents a technological measure" when it avoids or bypasses a copyright owner's protective measures. *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 366 (5th Cir. 2010). Here, Philips had protective measures in place, such as passwords, that were designed to ensure people could only access information in accordance with their CSIP classification. Doc. 243, Pl.'s Sealed App'x, 580–82. Defendants then used a fake IST certificate to bypass these protective measures. *Id.* at 39–41. Philips has thus established that Defendants circumvented Philips' technological measures as a matter of law.

### iii. Philips' technological measures effectively controlled access to Philips' protected works.

Philips has established as a matter of law that its technological measures effectively controlled access to Philips' copyrighted software. A plaintiff establishes this element of a DMCA claim when the protective measures require someone to, with the plaintiff's approval, apply information or use some process to gain access to the copyrighted works. 17 U.S.C. § 1201(a)(3)(B).

In *Digital Drilling Data Systems, L.L.C. v. Petrolink Services, Inc.*, the Fifth Circuit concluded

that a plaintiff had not effectively controlled access to their copyrighted works because the plaintiff's software code "was stored in an open database file." 965 F.3d 365, 376 (5th Cir. 2020). Thus, anyone could access the copyrighted software without needing the plaintiff's permission. *Id.*

Here, Philips controls access to the copyrighted software by requiring both a password and an IST certificate to access any information classified as CSIP Level 1 or higher. Doc. 243, Pl.'s Sealed App'x, 582–83. And someone can generally only obtain this information directly from Philips—the proprietary software is not available on a public database. *See id.* at 17. Philips has also produced contracts showing that it did not allow its licensees to share their access with someone who had not contracted with Philips. Doc. 242, Pl.'s App'x, 84. Thus, parties can only lawfully obtain access to CSIP Level 1 information or higher if they receive permission from Philips. Therefore, Philips has demonstrated as a matter of law that it effectively controlled access to its copyrighted works. *See* 17 U.S.C. § 1201(a)(3)(B); *see also Dig. Drilling Data Sys.*, 965 F.3d at 376.

> *iv. The DMCA right to repair exemption applies to some of the circumventions at issue in this case.*

On October 28, 2021, the Library of Congress promulgated a regulation that creates a "right to repair" exemption to the DMCA. 37 C.F.R. § 201.40(b). The right to repair exemption to the DMCA protects circumvention of technological measures on medical devices, if the defendant engages in a non-infringing use, only "when circumvention is a necessary step to allow the diagnosis, maintenance, or repair of such a device." *Id.* § 201.40(b)(15). Defendants argue that this exemption to the DMCA bars Philips' DMCA claims.[3] Doc. 245, Defs.' Br. Mot. Summ. J., 8.

---

[3] Philips insists that the Court has already held that the right to repair exemption does not apply here. Doc. 266, Pl.'s Resp., 24. However, the Court has only held that the reverse engineering exemption to the DMCA does not apply because the reverse engineering exemption requires an individual to have "lawfully obtained the right to use a copy of the computer program." Doc. 185, Mem. Op. & Order, 10 (citing 21 U.S.C. § 1201(f)).

The DMCA right to repair exemption applies to the conduct at issue in this lawsuit. Defendants circumvented Philips' security measures to gain access to the tools Defendants needed to provide maintenance and repair services on medical devices. Indeed, Defendants contracted with hospitals to ensure the MRI machines were working as designed. Doc. 246, Defs.' App'x, 2–3. This is the exact conduct contemplated by § 201.40(b)(15). However, this exemption does not excuse all of Defendants' circumventions.

Philips presents four arguments for why the DMCA right to repair exemption does not apply here. First, Philips argues that the exemption does not apply retroactively, so any circumventions that occurred before the Library of Congress promulgated this regulation are not protected. Doc. 240, Pl.'s Br. Mot. Summ. J., 19–20. Second, Philips argues that the Exemption only protects non-infringing uses, and Defendants infringed protected works. *Id.* at 21. Third, Philips contends that the DMCA exemption does not apply because Defendants modified files when they circumvented security measures. *Id.* Fourth, Philips argues that Defendants did not need to circumvent the security measures to provide maintenance services. *Id.* at 22–23. The Court addresses each argument in turn.

a. The right to repair exemption does not apply retroactively.

Any circumventions that occurred before October 28, 2021, do not fall within the scope of the right to repair exemption to the DMCA. There is a presumption that regulations do not apply retroactively. *See Germain v. US Bank Nat'l Ass'n as Tr. for Morgan Stanley Mortg. Loan Tr. 2006-7*, 920 F.3d 269, 274–75 (5th Cir. 2019). A court may apply a regulation retroactively if "the regulation clearly expresses [that] it is to be applied retroactively." *Id.* at 274. When a regulation does not clearly express that it should be applied retroactively, the Court should not apply the regulation "to the event or act in question" if doing so would have a "retroactive effect." *Id.* at 275. A regulation has

retroactive effect if it "attaches new legal consequences to events completed before [the regulation's] enactment." *Id.* (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001)).

There is nothing in the text of the DMCA right to repair exemption that suggests it should apply retroactively. *See generally* 37 C.F.R. § 201.40(b)(15). And because Defendants attempt to use it as a defense that did not exist at the time Defendants violated the DMCA, this application would have a retroactive effect. *See Germain*, 920 F.3d at 275. Therefore, the DMCA right to repair exemption is inapplicable to any circumvention that occurred before the Library of Congress promulgated it on October 28, 2021. Otherwise, it would have an impermissible retroactive effect.

Here, Philips has identified 21 times that it believes Defendants circumvented Philips' security measures using a fake IST certificate before September 2019. Doc. 243, Pl.'s Sealed App'x, 547–65. All these claimed circumventions occurred before the Library of Congress promulgated the right to repair exemption to the DMCA. Therefore, the exemption does not excuse any of this conduct.

However, Philips also presents evidence that Defendants circumvented its technological measures once in September 2022. *Id.* at 565. Thus, the DMCA exemption could potentially apply to the single instance Philips has identified Defendants using a fake IST certificate after the Library of Congress promulgated the right to repair exemption.

   b.  Defendants' circumventions were for a non-infringing purpose.

Second, Philips argues that the DMCA exemption does not apply because Defendants infringed Philips' copyrighted software. Doc. 240, Pl.'s Br. Mot. Summ. J., 21. The DMCA requires any exemption promulgated by the Library of Congress to only cover "noninfringing uses." 17 U.S.C. § 1201(a)(1)(D). Philips argues that Defendants' circumventions were infringing uses of

Philips' proprietary software because Defendants' circumventions were motivated to "bypass Philips' security to freeride and make non-transformative use of Philips' protected software for commercial gain." Doc. 240, Pl.'s Br. Mot. Summ. J., 21. The Court rejects this argument. The Library of Congress promulgated a regulation that allows owners of medical devices to circumvent security measures to perform maintenance and repair services on their medical devices. *See* 37 C.F.R. § 201.40(b)(15). Here, the owners of the medical devices simply contracted with Defendants to do so. Doc. 246, Defs.' App'x, 2. Thus, it is not at all clear why this would constitute an infringing use of Philips' copyrighted software. Accordingly, the Court rejects this argument.

          c.   Defendants did not modify any registry files after the Library of Congress promulgated the right to repair exemption.

Third, Philips argues that the DMCA exemption does not apply because Defendants modified Philips' software when they circumvented Philips' technological measures. Doc. 241, Pl.'s Br. Mot. Summ. J., 21–22. The parties agree that the DMCA Exemption does not protect any circumventions that modify a medical device or the medical device's software.[4] One of Philips' circumvention methods involved modifying registry files. Doc. 243, Pl.'s Sealed App'x, 55–56. When someone modifies a registry file, they are changing the software on a Philips MRI machine. *See id.* at 576. Shannon testified that he modified a registry file "two or three times," and he told his employees to modify other registry files. Doc. 242, Pl.'s App'x, 415. Thus, modifying a registry file would potentially not be protected under the DMCA exemption.

---

[4] Register's Recommendation, Section 1201 Rulemaking: Eighth Triennial Proceeding to Determine Exemptions to the Prohibition on Circumvention at 208, available at https://cdn.loc.gov/copyright/1201/2021/2021_Section_1201_Registers_Recommendation.pdf.

     Both sides appear to agree that the Register's Recommendation is binding even though this language is not found in the DMCA exemption. Doc. 241, Pl.'s Br. Mot. Summ. J., 21–22; Doc. 271, Defs.' Resp., 9–10. Accordingly, the Court will assume that a circumvention that results in modifying the software on a medical device is not exempted from DMCA liability.

However, Defendants did not always modify registry files when they circumvented Philips' technological measures. As discussed throughout this Order, Defendants would also use a fake IST certificate to circumvent the security measures, and the use of a fake IST certificate does not involve modifying the software on an MRI machine. Thus, Defendants' circumventions where they modified a registry file are not protected by the exemption, but this finding does not mean that all of Defendants' circumventions are likewise not protected.

There is no evidence that Defendants modified a registry file when they supposedly used a fake IST certificate in 2022. Doc. 243, Pl.'s Sealed App'x, 564–65. Thus, this argument fails to establish that the 2022 circumvention that occurred while the exemption was in effect is not protected.

> d. Defendants' circumvention of Philips' security measures was necessary to perform maintenance and repair services on Philips MRI machines.

Fourth, Philips argues that Defendants did not need to circumvent Philips' security measures to provide maintenance and repair services for the MRI machines. As relevant here, the DMCA right to repair exemption only authorizes circumventing technological measures that are necessary for the maintenance or repair of a medical device. 37 C.F.R. § 201.40(b)(15). Philips argues that the DMCA exemption does not apply because Defendants' circumventions gave them "access to a massive suite of Philips' proprietary services tools that Shannon admits he does not need." Doc. 241, Pl.'s Br. Mot., 22. This argument fails. The relevant inquiry is not whether the circumvention gave Defendants access to more than they needed to maintain or repair the medical devices. Instead, the inquiry is whether the circumvention was necessary for Defendants to be able to perform such services on the medical devices. *See* 37 C.F.R. § 201.40(b)(15).

The evidence before the Court indicates that Defendants needed to use the Service Tools to

provide maintenance services on the MRI machines, Doc. 246, Defs.' App'x, 2–3, and they could not access the Service Tools without circumventing Philips' security measures after SP5. *Id.* Thus, Defendants needed to circumvent the technological measures to repair and maintain medical devices. The fact that Defendants also received access to more materials than they needed to provide repair services does not mean that Defendants' circumvention was not necessary to repair the device.

In sum, Philips is entitled to judgment as a matter of law on its DMCA claims. At trial, Philips may recover damages for every time Defendants circumvented Philips' technological measures before the DMCA exemption was promulgated on October 28, 2021, and every time Defendants circumvented the technological measures after the DMCA exemption was promulgated when Defendants modified a registry file. Philips may not, however, recover damages for Defendants' circumventions after October 28, 2021, where Defendants did not modify any software, because such circumventions are protected by the DMCA right to repair exemption as a matter of law.

### 3.  Philips is Entitled to Summary Judgment on its Fraud Claim.

Philips is entitled to summary judgment as to liability on its fraud claim. Under Texas law, fraud claims have six elements:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 674 (5th Cir. 2015); *see also Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). "A representation is material if the representation was important to the plaintiff in making a decision, such that a reasonable person would be induced to act on and attach importance to the representation in making the decision."

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019).

As with its CFAA and DMCA claims, Philips relies on Defendants using a fake IST certificate to support its fraud claim. When Defendants used the fake Donald Trump IST certificate, Defendants made a false representation that they were a Philips Field Service Engineer who was allowed to access CSIP Level 2 materials. *See Lawrence*, 808 F.3d at 674. A reasonable person would find this representation material because using the fake IST certificate gave Defendants access to Philips' proprietary software tools. *See Barrow-Shaver Res. Co.*, 590 S.W.3d at 496. Thus, the first two elements of Philips' fraud claim are satisfied.

Next, Defendants knew that the representation was false because Shannon has admitted that he only ever had authority to access CSIP Level 0 tools. Doc. 242, Pl.'s App'x, 364. Thus, Shannon knew that he was not a Field Service Engineer who was allowed to access CSIP Level 2 information when he used the fake IST certificate. *See Lawrence*, 808 F.3d at 674.

Defendants further made the misrepresentation with the intent that Philips would grant them access to the MRI machine. Shannon admitted that he used the fake IST certificate because he wanted to circumvent Philips' security measures, Doc. 242, Pl.'s App'x, 354–55, thus the intent element of the fraud claim is satisfied. *See Lawrence*, 808 F.3d at 674.

The last two elements of the fraud claim are satisfied because Philips relied on Defendants' misrepresentation when Philips allowed Defendants access the CSIP Level 2 tools on Philips MRI machines, and Philips was injured by the misrepresentation because Defendants were able to access Philips' proprietary software. *Id.* Accordingly, Philips has established each element of its fraud claim as a matter of law, and the Court grants Philips summary judgment as to liability on the fraud claim. At trial, Philips may present evidence on what damages it incurred in connection with its common

law fraud claim.

    **4.**  <u>There is a Genuine Issue of Material Fact on Philips' Unfair Competition Claim.</u>

    There is a genuine issue of material fact on Philips' state-law claim for unfair competition. Under Texas law, "[u]nfair competition . . . is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (internal quotation omitted). But a claim for unfair competition cannot stand on its own; rather, liability must be premised on some other independent substantive tort or illegal conduct. *See id.*; *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied). Here, Philips' claim for unfair competition is premised on Defendants violating the DMCA and the CFAA. Doc. 119, Second Am. Compl., ¶¶ 123–32. Because the Court found that Philips has established Defendants violated the DMCA and the CFAA, there is an underlying tort to support Philips' unfair competition claim.

    Defendants argue that Philips' claim for unfair competition fails because Defendants' circumventions of Philips' security measures are not illegal as such circumventions are "expressly authorized by law." Doc. 245, Defs.' Br. Mot. Summ. J., 12. Specifically, Defendants contend that regulations promulgated by the FDA and the Library of Congress allowed Defendants to use a fake IST certificate to access the Service Tools. *See id.* The Court has rejected this argument previously, and as discussed above, most circumventions occurred before the right to repair exemption to the DMCA took effect. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Philips' unfair competition claim.

5.  The Statute of Limitations Only Bars Philips' Unfair Competition Claim Against Axiom and Image II.

Defendants argue that all four of Philips' remaining claims against Axiom and Image II are barred by their respective statute of limitations. Doc. 245, Defs.' Br. Mot. Summ. J., 5–7. Importantly, Defendants do not argue that any of Philips' claims against Shannon or Image Tech are barred by the statute of limitations.

CFAA and unfair competition claims have a statute of limitations of two years. 18 U.S.C. § 1030(g); *see* TEX. CIV. PRAC. & REM. CODE § 16.003(a). Claims asserted under the DMCA have a three-year statute of limitations. 17 U.S.C. § 507(b). And Texas common law fraud claims have a four-year statute of limitations period. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). Philips' two federal claims, the CFAA and DMCA claims, were commenced once Philips filed its Second Amended Complaint. *See Caldwell v. Martin Marietta Corp.*, 632 F.2d 1184, 1188 (5th Cir. 1980) ("[A]n action commences simply upon the filing of a complaint."); *see also* 18 U.S.C. § 1030(g); 17 U.S.C. § 507(b). But under Texas law, a "plaintiff must not only file suit within the limitations period, but must also use due diligence in serving the defendant with process if the defendant is served after the expiration of the limitations period." *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990).

The Court must look to the date of each circumvention to determine whether any of them are barred by the respective statute of limitations. As discussed above, these circumventions constitute the conduct giving rise to liability for all of Philips' remaining claims. Dr. Orso testified that he believes Defendants circumvented Philips' technological measures at least 22 times. Doc. 243, Pl.'s Sealed App'x, 573. Twenty-one of the 22 circumventions occurred before September 2019, which is more than four years before Philips asserted its claims against Axiom and Image II. *Id.* at

547–64. Therefore, the statute of limitations bars all four claims against Axiom and Image II in connection with the earlier 21 circumventions unless Philips can demonstrate that an exception to the statute of limitations applies.

Philips argues both that its claims against Axiom and Image II relate back to the original Complaint and that they are subject to the discovery rule. Doc. 265, Pl.'s Resp., 16. For reasons the Court will explain below, the Court concludes that Philips' claims against Axiom and Image II do not relate back to the original Complaint. However, Philips' fraud and DMCA claims are not barred by the statute of limitations under a different exception. Additionally, there is a genuine issue of material fact whether Philips' CFAA claim against Axiom and Image II is barred by the statute of limitations. Lastly, the Court concludes that any acts of unfair competition that occurred before September 22, 2021, are barred by the statute of limitations.

*i. Philips' claims against Axiom and Image II do not relate back to Philips' original Complaint.*

Philips' claims against Axiom and Image II do not relate back to the original Complaint. A plaintiff's claim is not barred by the statute of limitations if it relates back to the original complaint. FED. R. CIV. P. 15(c). An amendment adding a new party to the lawsuit relates back to the original complaint if:

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
>> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1)(C)(i)–(ii).

Rule 15(c)(1)(C) has three elements: "(1) the same conduct, transaction, or occurrence; (2)

notice [to the new defendant]; and (3) mistake." *Liggins v. City of Duncanville*, No. 3:20-CV-0654-S, 2021 WL 929105, at *4 (N.D. Tex. Mar. 11, 2021) (Scholer, J.). Philips has the burden to show that its amendment adding Axiom and Image II to this lawsuit relates back to the original Complaint. *Al-Dahir v. F.B.I.*, 454 F. App'x 238, 242 (5th Cir. 2011). "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 470 (5th Cir. 2019) (citation omitted). But if the plaintiff identified the wrong company when initially filing suit, then the amended complaint can relate back to the original complaint. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 554 (2010).

Here, Philips has failed to meet its burden of establishing that it did not originally sue Axiom and Image II because of a mistake regarding the proper identity of the Defendants. Philips claims that its mistake was failing to name every corporate party involved in this lawsuit, and that this mistake was caused by "confusion over the corporate entities involved in the unlawful conduct." Doc. 266, Pl.'s Resp., 16–17. In other words, the mistake was that Philips did not learn that Axiom and Image II existed until Shannon's deposition in July 2023. The Court fails to see any distinction between a plaintiff not knowing the defendant's identity and Philips' argument that it did not know every corporate entity that committed the unlawful conduct. *Cf. Winzer*, 916 F.3d at 471 ("Failing to identify individual defendants cannot be characterized as a mistake." (citation and alteration omitted)); *see also Mornes v. Valdez*, 414 F. Supp. 3d 888, 891 (N.D. Tex. 2019) (Toliver, M.J.) ("Plaintiff alleges that he only recently learned of Judd's identity, not that he was mistaken as to her identity. Thus, the relation-back doctrine does not apply.").

In Philips' Response, Philips argues that that it did not know Axiom and Image II were involved with Shannon and Image Tech until July 2023, Doc. 266, Pl.'s Resp., 20, which further suggests that its failure to join the two Defendants was because it failed to identify the two companies, as opposed to made a mistake regarding which companies were the proper defendants. Accordingly, the Court concludes that Philips' claims against Axiom and Image II do not relate back to the original Complaint.

*ii. Philips' DMCA and fraud claims against Axiom and Image II are timely, but the Texas discovery rule does not render Philips' claim for unfair competition timely, and there is a genuine issue of material fact regarding whether the federal accrual rule renders Philips' CFAA claim timely.*

Philips' DMCA and fraud claims against Axiom and Image II are timely because Philips did not discover its injury until June 4, 2021. But the statute of limitations has run on Philips' unfair competition claim against Axiom and Image II for every circumvention that occurred before September 22, 2021, while there is a genuine issue of material fact on whether Philips' CFAA claim is barred by the statute of limitations. The Court first notes that the date the statute of limitations began running for Philips' state-law claims will be determined using the Texas discovery rule, while the date for Philips' federal claims will be dictated by the federal accrual rule. The Court will discuss Philips' state and federal claims separately because they are governed by different standards.

a.  The Texas discovery rule delays the accrual of the Texas fraud and unfair competition claims until June 4, 2021.

The Texas discovery rule "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). "The discovery rule applies only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively

verifiable." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011) (citation omitted). An injury is inherently undiscoverable "when the wrong and injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). The question of whether a legal injury is inherently undiscoverable "is decided on a categorical rather than case-specific basis." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). This requires the Court to decide if the type of injury the plaintiff suffered is inherently undiscoverable—not whether the plaintiff's particular injury was discoverable. *Id.*

The type of injuries at issue in this lawsuit were inherently undiscoverable. *See Shell Oil Co.*, 356 S.W.3d at 930. Philips' injuries stem from Defendants circumventing the company's security measures using a fake IST certificate that impersonated a Philips Field Service Engineer. Doc. 243, Pl.'s Sealed App'x, 39–41. A defendant hacking into a plaintiff's computer system by impersonating one of the plaintiff's employees is inherently undiscoverable because the plaintiff would have no reason to know the hacker was not their employee and because the defendant is trying to avoid detection. Thus, the Court finds that the injuries were inherently undiscoverable, and that the discovery rule can apply to Philips' state-law claims. *See Shell Oil Co.*, 356 S.W.3d at 930.

The Court holds that Philips has the burden to show there is a genuine issue of material fact on whether the Texas discovery rule applies to Philips' state-law claims. The Supreme Court of Texas has held that a "defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Thus, under the Texas Rules of Civil Procedure, a defendant moving for summary judgment has the burden "to negate the [Texas] discovery rule by proving as a matter of law that no issue of material fact exists concerning when the plaintiff

discovered or should have discovered his injury." *Rollins v. S. Baptist Convention*, 628 S.W.3d 583, 594 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (citation omitted). However, in *F.D.I.C. v. Shrader & York*, the Fifth Circuit explained that, even with claims asserted under Texas law, the Federal Rules of Civil Procedure require the plaintiff to "produc[e] some summary judgment evidence in support of its discovery rule argument." 991 F.2d 216, 220 (5th Cir. 1993). But the Fifth Circuit later held that the defendant has the burden to negate the Texas discovery rule for Texas law claims, without explaining why it was diverging from the prior opinion. *Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001).

One district court within the Fifth Circuit addressed this conflicting precedent and followed the *Shrader & York* decision because "earlier precedent applies" absent any intervening change in the law. *Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 576 (W.D. Tex. 2019). The court went on to explain that it was unaware of any subsequent intervening change in law that would require it to follow the later Fifth Circuit opinion. *Id.* The Court finds this district court's reasoning persuasive, and holds that Philips has the burden to demonstrate the existence of a genuine issue of material fact regarding whether the Texas discovery rule delays the accrual of its state-law claims.

The Texas discovery rule delays the accrual of Philips' state-law claims until June 4, 2021. Philips learned that Shannon and Image Tech had a fake IST certificate they used to circumvent Philips' security measures on June 4, 2021. Doc. 242, Pl.'s App'x, 430, 433. There is no evidence to suggest that Philips knew or should have known that any of the Defendants were engaged in the conduct at issue in this case before June 4, 2021. Further, Defendants offer no argument for why Philips should have known about its injuries before June 4, 2021. *See* Doc. 245, Defs.' Br. Mot. Summ. J., 5–7. Thus, the Court finds that the Texas discovery rule applies, and the statute of

limitations did not begin running on Philips' fraud or unfair competition claims before June 4, 2021.

Philips served Axiom and Image II on September 22, 2023.[5] Doc. 125, Summons; Doc. 126, Summons; *see Gant*, 786 S.W.2d at 260. Common law fraud claims have a statute of limitations of four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). Because Philips sued Axiom and Image II just over two years after June 4, 2021, Philips' fraud claim against Axiom and Image II is timely. However, unfair competition claims have a statute of limitations of two years. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a). Thus, to survive Defendants' Motion for Summary Judgment as to its unfair competition claim against Axiom and Image II, Philips needs to create a genuine issue of material fact that its unfair competition claim did not accrue before September 22, 2021—two years before it served Axiom and Image II.

While neither side directly addresses this issue, the Court notes that there are two relevant dates for determining whether the discovery rule delays the accrual of Philips' claims. First, Philips learned that Shannon and Image Tech had a fake IST certificate on June 4, 2021, as discussed above. Doc. 242, Pl.'s App'x, 430, 433. Second, Philips learned that Axiom and Image II were involved in this lawsuit in July 2023. Doc. 267, Pl.'s App'x, 5. Thus, the Court needs to determine if the discovery rule delays the accrual of Philips' unfair competition claim until July 2023.

Philips fails to meet its burden of establishing the Texas discovery rule delays the accrual of its unfair competition claim against Axiom and Image II until July 2023. The Supreme Court of

---

[5] While Philips filed its Second Amended Complaint which asserted claims against Axiom and Image II on September 14, 2023, Philips did not offer any argument establishing that it exercised reasonable diligence in serving Axiom and Image II after filing the Second Amended Complaint. Doc. 265, Pl.'s Resp., 15–21. Therefore, the Court will assume that Philips' Texas law claims against Axiom and Image II did not commence until Axiom and Image II were served on September 22, 2023.

Texas has held that ignorance of a defendant's identity is not grounds to delay the accrual of a statute of limitations. *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 462 (Tex. 2023). Instead, the discovery rule only delays the accrual date until Philips learned the facts that gave rise to its claims. *See id.* at 461. Philips only argues that it did not learn Axiom and Image II were proper defendants until Shannon's deposition in July 2023. Doc. 266, Pl.'s Resp., 18. Indeed, Dickson stated that Philips did not learn that Image II and Axiom were involved in the conduct at issue in this lawsuit until Shannon's deposition. Doc. 267, Pl.'s App'x, 5.

Philips knew of the facts that gave rise to its claims when it learned that Shannon and Image Tech had a fake IST certificate because Defendants' use of the fake IST certificate is the conduct supporting all of Philips' claims. Thus, once Philips learned Shannon had a fake IST certificate, Philips learned the facts that gave rise to the claims it asserts in this lawsuit. The Court finds that Philips' ignorance as to the two other Defendants does not further delay the accrual of Philips' unfair competition claims. *See Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc.*, 659 S.W.3d at 462.

Additionally, the Court will not use the fraudulent concealment doctrine to toll the statute of limitations of Philips' unfair competition claim until July 2023. "Fraudulent concealment tolls the statute of limitations after a cause of action accrues." *Lilly v. Texas Dep't of Crim. Just.*, 472 S.W.3d 411, 420 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Plaintiffs must prove four elements to toll the statute of limitations because of fraudulent concealment: "(1) existence of an underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." *Id.*

Here, Philips has entirely failed to explain why the Court should toll the statute of limitations in connection with its unfair competition claim against Axiom and Image II because of fraudulent

concealment. Philips argues that Defendants concealed the fact that Axiom and Image II were involved in the litigation, Doc. 266, Pl.'s Resp., 20–21, but Philips offers no evidence to suggest that Axiom and Image II concealed the *existence* of the unfair competition claim. In fact, Philips had knowledge of the unfair competition claim as Philips initiated this lawsuit in January 2022. Thus, the Court finds that the fraudulent concealment doctrine does not warrant tolling the statute of limitations on Philips' unfair competition claim against Axiom and Image II.

However, Philips' unfair competition claim is not entirely barred by the statute of limitations. Philips has evidence that Defendants circumvented its security measures once in 2022, Doc. 243, Pl.'s Sealed App'x, 564, which means the unfair competition claim in connection with this circumvention is timely. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a).

In sum, Philips' fraud claim against Axiom and Image II is timely because the Texas discovery rule delayed the accrual of the fraud claim until June 4, 2021. But Philips' claim for unfair competition against Axiom and Image II is barred by the statute of limitations in connection with any circumvention that occurred before September 22, 2021.

> b. The federal accrual rule delays the accrual of the DMCA claim until June 4, 2021, and there is a genuine issue of material fact regarding whether the accrual date of Philips' CFAA claim was delayed until July 2023.

The accrual date of federal claims can likewise be delayed using the federal accrual rule.[6] "Under federal law, a claim accrues and the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015) (citations and

---

[6] Philips argues that the discovery rule defers accrual of its federal causes of action. Doc. 266, Pl.'s Resp., 18. In *King-White v. Humble Independent School District*, the Fifth Circuit used the term "federal accrual rule" as opposed to federal discovery rule. 803 F.3d 754, 762 (5th Cir. 2015).

alterations omitted). The Fifth Circuit has further explained that, with respect to federal claims, the statute of limitations "begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation." *McCune v. U.S. Dep't of Just.*, 592 F. App'x 287, 290 (5th Cir. 2014). The facts that give rise to a claim are: "(1) [that] an injury has occurred; and (2) the identity of the person who inflicted the injury." *Stewart v. Par. of Jefferson*, 951 F.2d 681, 684 (5th Cir. 1992).

Both of Philips' federal claims, the DMCA and CFAA claims, are subject to the federal accrual rule. "In this Circuit a copyright claim accrues 'when [the party] knew or had reason to know of the injury upon which the claim is based.'" *Jordan v. Sony BMG Music Ent. Inc.*, 354 F. App'x 942, 945 (5th Cir. 2009) (alteration in original) (quoting *Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006)). Under the CFAA, "[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g).

Because Defendants demonstrated that Philips' CFAA and DMCA claims would otherwise fall outside of the statute of limitations, Philips now has the burden to demonstrate that there is a genuine issue of material fact on whether the federal accrual rule delays the accrual date of its CFAA and DMCA claims. *See Garden City Boxing Club, Inc. v. Johnson*, 552 F. Supp. 2d 611, 616 (N.D. Tex. 2008) (Means, J.) ("The burden is on the plaintiff to come forward and demonstrate that the discovery rule should toll the limitations period." (citation omitted)).

The Court finds that the statute of limitations did not begin running for any of Philips' federal claims until June 4, 2021. As discussed above, Philips did not learn Defendants had a fake IST certificate until June 4, 2021. Doc. 242, Pl.'s App'x, 430, 433. Thus, as the Court found with

respect to the Texas discovery rule, Philips did not know or have reason to know of the injuries that are the subject matter of this lawsuit before June 4, 2021. *See King-White*, 803 F.3d at 762.

Philips filed its claims against Axiom and Image II on September 14, 2023. Doc. 119, Second Am. Compl.; *see Caldwell*, 632 F.2d at 1188 ("[A]n action commences simply upon the filing of a complaint."). DMCA claims have a statute of limitations of three years. 17 U.S.C. § 507(b). Because Philips sued Axiom and Image II just over two years after June 4, 2021, Philips' DMCA claim against Axiom and Image II is timely. However, Philips' CFAA claim has a statute of limitations of two years. 18 U.S.C. § 1030(g). Thus, to survive Defendants' Motion for Summary Judgment, Philips needs to demonstrate there is a genuine issue of material fact that the CFAA claim against Axiom and Image II did not accrue until Shannon's deposition in July 2023.

There is a genuine issue of material fact regarding whether the federal accrual rule delays the accrual of Philips' CFAA claim until July 2023. As discussed above, in contrast with Texas's discovery rule, the federal accrual rule applies if Philips did not have actual or constructive knowledge of both its injury and the identity of who caused the injury. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). While Philips not knowing that Axiom and Image II also caused Philips' injury does not delay accrual of Philips' unfair competition claim, it is sufficient to delay accrual of Philips' CFAA claim.

Here, Philips has introduced evidence that it did not have actual knowledge of Axiom's and Image II's involvement until July 2023. Doc. 267, Pl.'s App'x, 5. Thus, Philips did not have actual knowledge of one of the critical facts necessary for an injury to accrue, even after learning that Shannon and Image Tech had a fake IST certificate. *See Piotrowski*, 237 F.3d at 576.

Further, there is a genuine issue of material fact on whether Philips should have known that

Axiom and Image II were involved in the conduct giving rise to this lawsuit. Defendants argue that Image Tech has been inactive for over a decade, and that Philips would have discovered Image Tech was inactive with "a simple Secretary of State search." Doc. 245, Def.'s Br. Mot. Summ. J., 7. However, Philips promptly investigated Shannon and Image Tech after learning they had a fake IST certificate. Doc. 267, Pl.'s App'x, 5. And some documents produced in discovery suggested that Image Tech was still operating. *See* Doc. 242, Pl.'s App'x, 343–45. Therefore, there is a genuine issue of material fact on whether Philips should have known that Axiom and Image II also caused Philips' injuries. *See Piotrowski*, 237 F.3d at 576.

In sum, Philips' DMCA claim against Axiom and Image II is timely because the DMCA claim did not accrue until June 4, 2021, and Philips asserted its DMCA claim against these two defendants less than three years after the DMCA claim accrued. Additionally, there is a genuine issue of material fact on whether Philips' CFAA claim accrued on July 2023—which would mean that the statute of limitations does not bar the claim—or whether the CFAA claim accrued on June 4, 2021—which would mean the CFAA's statute of limitations bars Philips' claim. Whether Philips had constructive knowledge that Axiom and Image II were also involved in the lawsuit will be resolved at trial. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Philips' DMCA and CFAA claims against Axiom and Image II.

6. Philips is Entitled to Summary Judgment on Its Claims Against Shannon Because There is Evidence that Shannon Individually Engaged in the Unlawful Conduct.

Defendants lastly move for summary judgment on Philips' claims against Shannon. Specifically, Defendants argue that Philips has not established that the Court should pierce the corporate veil and hold Shannon liable for Axiom's, Image Tech's, or Image II's torts. Doc. 245, Defs.' Br. Mot. Summ. J., 14. While it is true that, under Texas law, a member of an LLC is not

ordinarily liable for the LLC's debts, TEX. BUS. ORGS. CODE § 101.114, the Court need not pierce the corporate veil to find Shannon liable here.

Philips has presented evidence establishing that Shannon is personally liable for violating the CFAA, the DMCA, and committing fraud. As discussed above, Shannon admitted to using a fake IST certificate to circumvent Philips' security measures and get access to CSIP Level 2 tools. Doc. 242, Pl.'s App'x, 354. The Court has already found that such conduct violates the CFAA, the DMCA, and that it also constitutes fraud. Thus, Shannon is personally liable, and the Court need not address Defendants' arguments that the Court should not pierce the corporate veil. *See Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) ("[A] corporate agent is personally liable for his own fraudulent or tortious acts."). Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Philips' claims against Shannon individually.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the parties' Motions to Strike. Specifically, the Court **DENIES AS MOOT** Philips' Motion to Strike an Amicus Brief (Doc. 221) and Philips' Motion to Strike a Response Filed by a Non-Party (Doc. 255). The Court **GRANTS** Defendants' Motion to Strike the Expert Report of Dr. Alberto Gutierrez (Doc. 234). Additionally, the Court **GRANTS IN PART** and **DENIES IN PART** Philips' Motion to Exclude Certain Opinion of Michael Fenn (Doc. 227). Lastly, the Court **DENIES** Defendants' Motion to Strike the Expert Report of Dr. Alessandro Orso (Doc. 275) and Defendants' Motion to Strike Expert Report of Schoettelkotte (Doc. 279).

The Court then **GRANTS IN PART** and **DENIES IN PART** Philips' Motion for Partial

Summary Judgment (Doc. 239). Specifically, the Court **GRANTS** Philips summary judgment as to liability on its CFAA, DMCA, and fraud claims against all four Defendants. However, there is a genuine issue of material fact on whether Philips' CFAA claim against Defendants Axiom and Image II is barred by the statute of limitations. This fact issue will be resolved at trial.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (Doc. 244). Specifically, the Court **DENIES** Defendants' Motion for Summary Judgment as to liability on all four of Philips' remaining claims. The Court also **DENIES** Defendants' Motion for Summary Judgment as to its argument that the statute of limitations bars Philips' CFAA, DMCA, and fraud claims against Axiom and Image II. However, Philips' unfair competition claim against Axiom and Image II is barred by the statute of limitations for any circumvention of a Philips security measure that occurred before September 22, 2021.

The following issues will be resolved at trial:

- Whether the federal accrual rule delayed the accrual of Philips' CFAA claim against Defendants Axiom and Image II until July 2023;

- The liability of Philips' unfair competition claim against Defendants Marshall Shannon and Image Tech;

- The liability of Philips' unfair competition claim against Axiom and Image II as to any circumventions of Philips' security measure occurring after September 22, 2021; and

- Philips' damages on all four of its remaining claims.

SO ORDERED.

SIGNED: November 22, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE